UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JACKLYN WILFERD, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) No. _____ <br> ) <br> ) |
| DIGITAL EQUITY, LLC, and KHURAM DHANANI, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

Plaintiff Jacklyn Wilferd ("Wilferd" or "Plaintiff"), by and through her attorneys, hereby alleges as follows against Digital Equity, LLC ("Digital Equity"), and Khuram Dhanani ("Dhanani," and collectively, "Defendants"):

## INTRODUCTION

1. This is a diversity and declaratory judgment action arising under 28 U.S.C. § 1332, and 28 U.S.C. §§ 2201 and 2202, pursuant to Georgia and California state law, alleging causes of action for an accounting, breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, financial abuse of an elder, defamation and for a declaratory judgment, seeking, <u>inter alia</u>, compensatory, punitive and trebled damages, attorneys' fees and costs, as well as a declaration of the rights of the parties related to the claims herein.

2. In this case, plaintiff Jacklyn Wilferd purchased <u>wines.com</u> in 1994 and developed the domain and a website for 24 years, before entering into profit-sharing agreements in 2018 with defendants to further develop and sell the website and domain as a commercial product, while generating revenue in the interim. Prior to entering into the profit-sharing agreements with defendants for development and sale of the website and domain, Wilferd had

either rejected or did not complete offers or agreements to purchase the domain ranging from $700,000 to $2.5 million, as she wished to maximize the value of her sale as a 68-years-old senior seeking to retire.  Dhanani, however, simply swindled Wilferd, paying her $50,000 for transfer of the website and domain to his company, Digital Equity, LLC, to facilitate a sale, but doing basically nothing to develop the website, except post pornographic content under Wilferd's name (contrary to his promises).  And then, after selling the website and domain only a year later in 2019, Dhanani claimed that defendants had no obligation to pay Wilferd anything more under their profit-sharing agreements, because the sale was purportedly not a "product sale," but a "corporate-level asset sale," a distinction nowhere part of their agreements.  To date, Dhanani has even refused to provide Wilferd any details regarding the sale or an accounting for the company in which she was a profit-sharing partner.

3. By this action, Wilferd seeks to recover the substantial value of the website and domain she developed for 24 years, worth between $1,000,000 and $5,000,000, which defendants disingenuously claim they purchased from her for only $50,000 (with no further obligation under their profit sharing agreements to account for the sale of the website and domain).  Because their misconduct constitutes an egregious fraud and elder abuse, Wilferd seeks to further recover punitive and trebled damages, attorneys' fees and costs in this action.

## PARTIES

4. Jacklyn Wilferd is an individual, who resides in and is a citizen of California.

5. Digital Equity, LLC, is a Georgia limited liability company, formed on May 3, 2017, with its principal place of business at 4850 Sugarloaf Parkway, Suite 209-111, Lawrenceville, Georgia 30044.

6. Upon information and belief, Khuram Dhanani is an individual, who resides in and is a citizen of Georgia, and the sole member of Digital Equity, LLC.

## JURISDICTION AND VENUE

7. This action arises under the laws of the State of Georgia and California. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of one state – California – and all defendants are citizens of a different state – Georgia. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. At a minimum, Plaintiff seeks damages related to and in the amount of the value of her profit-share from the sale of wines.com, which is at least $500,000.

8. This Court also has jurisdiction over Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this District pursuant to 18 U.S.C. §§ 1391(b)(1) and 1965(a), insofar as all Defendants reside and transact business in this District.

## FACTS

10. On September 19, 1994, Jacklyn Wilferd ("Wilferd" or "Plaintiff") purchased the domain wines.com. Like other single-word, product related domains, wines.com is highly valuable. In 2000, Wilferd received a $2.5 million offer for the domain, and a $2 million offer in 2008. While she entered into various agreements regarding a potential sale, for various reasons, she never completed any sale and retained ownership of the domain.

11. In 2012, Wilferd resumed active management of the domain, and through 2018, cultivated the domain as a marketable product for sale to an interested buyer. Wilferd developed a website with articles, videos, discussion boards, and terminology and resource pages on wines and matters of social interest among oenophiles (i.e., wine connoisseurs), as well as developed

substantial linking relationships, increasing traffic to the website and thereby increasing its value to a potential purchaser of the domain as a commercially viable product.  <u>See, e.g.</u>, Internet Archive, Wines.com, WAYBACK MACHINE (Jan. 3, 2017), <u>https://web.archive.org/web/20171228061858/http://wines.com/</u> (last visited Apr. 18, 2020).  In addition, in partnership with Lisa Consani ("Consani"), in 2017, Wilferd developed an ecommerce wine store on the website.

12. In 2018, Consani introduced Wilferd to defendant Khuram Dhanani ("Dhanani") as a potential business partner to help further develop <u>wines.com</u>, as Dhanani claimed to have substantial capital he would contribute to the business and experience in developing domains for sale as commercial products.

13. Indeed, during their telephone conversations in and around July 2018, Dhanani represented to Wilferd that, as part of the parties' joint venture arrangement, he (1) would invest $200,000-$300,000 of his own money into further developing <u>wines.com</u>, (2) had a "team" who could help further develop the website to a $3-5 million valuation "fast," and (3) in the arrangement, they would split all profits, including from the sale of the website and domain.  Wilferd—who was 68 years old at that time—was clear that, having received other offers for <u>wines.com</u>, and even one as recently as March 2018 for $700,000 from a broker (and another in July 2018 that she did not explore), the website was essentially her retirement fund, and in partnering with Dhanani, she would need at least $1,000,000 from their arrangement, which he claimed was achievable.

14. Dhanani offered to draft an agreement between the parties, and sent Wilferd two agreements: (1) a domain name purchase agreement ("Domain Agreement"), transferring <u>wines.com</u> to Digital Equity, LLC ("Digital Equity" or the "Company"), a limited liability

company, registered in Georgia, on May 3, 2017, of which, upon information and belief, Dhanani was the sole member, in exchange for a payment of $50,000 to Wilferd and (2) a profit-sharing agreement ("Profit Agreement"), in which Wilferd would receive from Digital Equity "50% (fifty percent) of net profits after expenses that are generated by Company directly from product sales, advertising sales, accessory sales, affiliate sales, ticket sales, tour sales and commision [sic] sales."

15. In addition, the Profit Agreement provided that Digital Equity "will provide [Wilferd] access to financial information upon request, including revenue, sales, expenses, screenshots, and profits."

16. To induce Wilferd to sign the agreements, Dhanani claimed that (1) prospective buyers would not work with him unless the domain was transferred to Digital Equity, (2) he already had an interested company willing to pay $200,000 for advertising on the website, and (3) Wilferd would receive $100,000 within thirty days, in addition to further payments for product sales, which would only increase as the Christmas season approached. As to the sale of the primary product in the proposed venture, wines.com, to allay Wilferd's concerns that she would not receive her desired retirement of $1,000,000 from the sale under their profit-sharing agreements, Dhanani further represented and agreed, as part of their joint venture and agreement, that (4) Defendants would not sell the website and domain for less than $3-4 million, (5) Wilferd would have the right to approve any sale, and (6) prior to any sale, Defendants would actively operate the website as a "cash cow," producing between $5,000 and $10,000 per month in profits. Wilferd reasonably and justifiably relied upon these representations by Dhanani, given his claimed superior business acumen and experience in developing domains for sale as commercial products.

17. Both the Domain and Profit Agreement were executed by Wilferd and Digital Equity on July 15, 2018 (attached hereto as **Exhibit A**).

18. In the months following execution of the agreements, Wilferd discovered that Dhanani did not have any advertising agreements for the website, did not have any money to invest into the website, and did not operate the website or develop its content for sale. Indeed, Wilferd discovered that Dhanani did not even drink wine.

19. Instead, Dhanani stated to Wilferd that the best way forward and to generate revenue was to find potential investors to fund the development of the website and manage its operations. In or around September 2019, Dhanani attempted to bring on a company called Underground Cellars to invest in and operate the website (with an option to purchase the website and domain). But after months of delay and inaction, Underground Cellars failed to make any investment or complete a purchase of the website and domain.

20. Consequently, for a period of nine months from July 2018 to April 2019, Dhanani made no effort to update, operate or otherwise fund the website. Wilferd repeatedly offered to return the $50,000 that Digital Equity paid for the transfer of the domain, but Dhanani refused.

21. Then, starting in April 2019, a series of blog articles started appearing on the website, attributed to Wilferd (which she did not author), filled with basic grammatical errors and broken sentence structures, and salacious, pornographic topics such as "PORN STAR SYDEY COLE CALLED HER FAVOURITE WINES (ENG), which read in part:

> Sydney Cole is one of the newest porn stars on the internet, but she is also ready to take over the industry. She looks and performances are perfect. She's a brunette who dyes her hair blonde and she has dark green eyes. She's a Florida babe, born in Tampa on November 2nd 1996. What I like the most about her are the boobs. She doesn't have big boobs, but they look magnificent. Her cup size is 32B, but the nipples are the ones that matter. She has big areolas that are the perfect size for sucking. Although she has puffy nips, they are hard and pointy. The boobs might not be big, but they surely match the rest of her body. She's 5 feet and 2 inches tall and weighs 105 lbs. Sydney Cole also has

> some sexy long legs and she has ribbon tattoos on both her hamstrings.  Besides these cute and sexy ribbons, she also has a tattoo of musical notes on her upper back.  As for piercings, she has one in her navel.  All in all, she is one of the hottest newcomers.  She will surely change a bit in the next period, as she is only 20 years old now and her body will still change for the next couple of years, but I'm sure she will look just as hot, if not hotter.
>
> This young porn star has gained her popularity thanks to the cumshots in BrattySis.  Bratty Sisters it's when horny young ladies give into the drive of their hormones inside family.  Teenage girls can be the worst.  They're hot as hell with loud mouths and bitchy attitudes.  They know they are jailbait yet still walk around in tiny shorts with their ass cheeks hanging out.  Then they hit 18 and are fully legal for you to watch in porn.  The naughtiest among them love being on camera and showing that fresh pussy to the world.  That's when teenage girls become the absolute best!

The article then lists "THE TOP TEN WINES BY SYDNEY COLE."  See Jackie Wilferd, PORN STAR SYDNEY COLE CALLED HER FAVOURITE WINES (ENG), WINES.COM (Jul. 31, 2014), https://wines.com/blog/porn-star-sydney-cole-called-her-favourite-wines-eng/ (last visited Apr. 18, 2020).  The article was backdated—which is a simple matter of selecting any desired date in the content management system—to appear as if it had been on the website for years.

22.     Wilferd raised these articles to Dhanani, but they continued to appear until July 2019.  After repeated attempts by Wilferd to coordinate with Dhanani on a plan to develop wines.com for sale, Dhanani said he would develop a strategy and respond by July 15, 2019, incidentally, the one year anniversary of the sale, after which applicable capital gains taxes would decline.  Dhanani responded to Wilferd in or around July 2019, suggesting that she write articles for the website and submit a plan to him.  After she did, however, Dhanani then suggested she merely edit articles he had developed by foreign workers who could create content.

23. After his last July 2019 response, Dhanani refused to respond to Wilferd and her repeated inquiries until October 8, 2019, when Wilferd discovered that wines.com had been sold to Brent Oxley, on August 27, 2019, as reflected in the WHOIS registration of the domain.

24. When confronted about the sale, Dhanani admitted that he sold the website and domain, but refused to provide any details regarding the sale, claiming he had no obligation to pay any of the profits to Wilferd, because he claimed the sale was a "corporate level" sale of assets, not sale of a "product" and therefore purportedly outside of the scope of the Profit Agreement and any other agreement. During the entire period, Digital Equity failed to pay any profit-sharing to Wilferd under the Profit Agreement or any other agreement.

25. Following the sale of the website and domain, Wilferd repeatedly requested an accounting from Digital Equity, including on April 17, 2020. And while Dhanani indicated that he would be providing a March 2020 statement, he has never provided any accounting.

## CAUSES OF ACTION

### COUNT I – ACCOUNTING
**(against all Defendants)**

26. Plaintiff incorporates by reference paragraphs 1 through 25 as if stated fully herein.

27. A special relationship of trust and confidence existed between Plaintiff and defendants Dhanani and Digital Equity, with whom Plaintiff entered into a joint venture and upon whom Plaintiff relied to determine profits, sufficient to entitle Plaintiff to a right of access to, and an inspection and accounting of, the books and records of Digital Equity, which were in Defendants' exclusive possession, custody and control, and for which Dhanani was responsible for maintaining and providing access.

28. Furthermore, Plaintiff entered into an enforceable contract with defendant Digital Equity, specifically providing for inspection and accounting rights in Paragraph 4 of their Profit Agreement, pursuant to which that Digital Equity agreed to "provide [Wilferd] access to financial information upon request, including revenue, sales, expenses, screenshots, and profits."

29. Plaintiff made several proper books and records requests between 2018 and 2020, including but not limited to on April 17, 2020, which to date, have been denied by Defendants.

30. Plaintiff is entitled to an order compelling the production of all Digital Equity books and records for inspection and an accounting.

**COUNT II – BREACH OF CONTRACT AND COVENANT OF
GOOD FAITH AND FAIR DEALING
(against defendant Digital Equity, LLC)**

31. Plaintiff incorporates by reference paragraphs 1 through 30 as if stated fully herein.

32. Plaintiff entered into a valid, enforceable written Profit Agreement with defendant Digital Equity, dated July 15, 2018, with reasonably definite and certain terms, pursuant to which Digital Equity would pay "50% (fifty percent) of net profits after expenses that are generated by Company directly from product sales, advertising sales, accessory sales, affiliate sales, ticket sales, tour sales and commision [sic] sales." As part of the contract, the law implied a covenant of good faith and fair dealing.

33. Plaintiff performed all of her obligations under the agreement, and never violated any term or provision of the agreement.

34. Defendant Digital Equity materially breached the agreement by failing to pay fifty percent of the profits from the sale of wines.com, which was a product sale under the Profit Agreement. Further, Digital Equity breached the covenant of good faith and fair dealing by

purportedly structuring the sale of wines.com in a manner so as to claim, and claiming to Wilferd, that it was not a product sale under the Profit Agreement, in order to deny Wilferd the profits to which she was entitled.

35.   As a direct and proximate cause of the Digital Equity's misconduct, Plaintiff suffered significant injury and damages.

### COUNT III – BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING
**(against all Defendants)**

36.   Plaintiff incorporates by reference paragraphs 1 through 35 as if stated fully herein.

37.   Plaintiff entered into a valid, enforceable oral joint venture agreement with Defendants in which they agree to jointly develop wines.com for sale to a third party and in connection therewith, Wilferd would enter into both the Domain and Profit Agreements with Digital Equity to facilitate the marketability and sale of the website and domain.  As part of the agreement, Defendants agreed that Dhanani (1) would invest $200,000-$300,000 of his own money into further developing wines.com, and (2) in the arrangement, they would split all profits, including from the sale of the website and domain.  Further, Defendants agreed that (3) they would not sell the domain for less than $3-4 million, (4) Wilferd would have the right to approve any sale, and (5) prior to any sale, Defendants would actively operate the website as a "cash cow" to produce monthly revenue.  As part of the contract, the law implied a covenant of good faith and fair dealing.

38.   Plaintiff performed all of her obligations under the agreement, and never violated any term or provision of the agreement.

39. Defendants materially breached all of their obligations, failing to perform any of them.  Instead, and further in breach of the covenant of good faith and fair dealing, Defendants engaged foreign third parties to develop content, without Wilferd's approval or consent, and purportedly structured a sale of the website by Digital Equity in a manner so as to claim, and claiming to Wilferd, that it was not a product sale under the Profit Agreement or part of any other agreement, in order to deny Wilferd the profits to which she was entitled.

40. As a direct and proximate cause of the Defendants' misconduct, Plaintiff suffered significant injury and damages.

### COUNT IV – BREACH OF FIDUCIARY DUTY
### (against all Defendants)

41. Plaintiff incorporates by reference paragraphs 1 through 40 as if stated fully herein.

42. Plaintiff was a profit-sharing partner in Digital Equity, a limited liability company, with Dhanani as its sole member, and a joint venture partner with Digital Equity and Dhanani, the principal officer and sole member of the Company, in whom Plaintiff placed a special trust and confidence.  As joint venture and profit-sharing partners, Digital Equity and Dhanani owed Plaintiff a fiduciary duty of utmost good faith and loyalty.  As to Dhanani in particular, he occupied positions in which Plaintiff placed a near-critical level trust, faith and confidence in his judgment, business acumen and advice in performing the principal executive office of Digital Equity.

43. Digital Equity materially breached its duty to Plaintiff by its bad faith sale of corporate products and failure (a) to provide accounting or books and records access to Plaintiff, as a means of hiding its fraud and misconduct from Plaintiff, and (b) to pay profits from the sale

of wines.com, claiming falsely and in bad faith that it was a sale of an "asset" rather than a "product" under the Profit Agreement.

44. Dhanani breached his fiduciary duty to Plaintiff by his bad faith (a) refusal to provide any accounting or books and records access to Plaintiff, as a means of hiding his fraud and misconduct from Plaintiff (b) failure to invest money in or in any manner reasonably develop wines.com, and (c) claim that Plaintiff was not entitled to any profits from Digital Equity because the sale of wines.com was a sale of an "asset" rather than a "product" under the Profit Agreement. In addition, Dhanani engaged in various acts of self-dealing, (d) transferring substantial profits to himself from Digital Equity.

45. As a direct and proximate cause of Defendants' misconduct, Plaintiff suffered significant injury and damages.

## COUNT V – FRAUD
### (against defendant Khuram Dhanani)

46. Plaintiff incorporates by reference paragraphs 1 through 45 as if stated fully herein.

47. Dhanani represented to Wilferd during their telephone conversations in and around July 2018, as part of a joint venture arrangement, that he (1) would invest $200,000-300,000 of his own money into further developing wines.com, (2) had a "team" who could help further develop the website to a $3-5 million valuation "fast," and (3) in the arrangement, they would split all profits from any product sales, including the website and domain.

48. Further, Dhanani claimed that (1) prospective buyers would not work with him unless the domain was transferred to Digital Equity, (2) he already had an interested company willing to pay $200,000 for advertising on the website, and (3) Wilferd would receive $100,000 within thirty days, in addition to further payments for product sales, which would only increase

as the Christmas season approached.  In addition, Dhanani represented that (4) Defendants would not sell the domain for less than $3-4 million, (5) Wilferd would have the right to approve any sale, and (6) prior to any sale, they would actively operate the website as a "cash cow," producing between $5,000 and $10,000 per month in profits.

49. All of these representations were intentionally and knowingly false at the time they were made, and were made with the intent that Wilferd would rely upon them.

50. Wilferd reasonably and justifiably relied upon the representations in entering into agreements with Dhanani's company, Digital Equity, and a joint venture with Defendants, given Dhanani's claimed superior business acumen and experience in operating websites and domain product sales.  Wilferd did not know and had no reason or means to know that the statements were false.

51. As a direct and proximate cause of Dhanani's misconduct, Plaintiff suffered significant injury and damages.

### COUNT VI – FINANCIAL ABUSE OF AN ELDER IN VIOLATION OF CAL. WELF. & INST. CODE § 15657.5
**(against all Defendants)**

52. Plaintiff incorporates by reference paragraphs 1 through 51 as if stated fully herein.

53. Under Cal. Welf. & Inst. Code § 15610.30, "'[f]inancial abuse' of an elder or dependent adult occurs when a person or entity does any of the following: (1) [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or "(2) [a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."

54. Wilferd is an elder under § 15610.27, as she was over the age of 65 and resided in California at all times during the period and with respect to the conduct alleged herein.

55. Dhanani and Digital Equity both took, secreted, appropriated, and obtained personal property from Wilferd, and assisted in such action, with intent to defraud, specifically in obtaining wines.com at a nominal transfer fee, with knowingly false claims that they would share profits in the development and sale of the website and domain, thereby violating § 15610.30.

56. Pursuant to Cal. Welf. & Inst. Code § 15657.5, "[w]here it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs."

57. As a direct and proximate cause of Defendants' misconduct, Plaintiff suffered significant injury, damages, attorneys' fees and costs.

## COUNT VII – DEFAMATION
### (against all Defendants)

58. Plaintiff incorporates by reference paragraphs 1 through 57 as if stated fully herein.

59. Between April and July 2019, Defendants published to third parties on the website wines.com, where Plaintiff is known to write articles, various articles attributed to Plaintiff without her permission or consent, which she did not author.

60. As a professional writer, the false attribution of the sexually salacious, pornographic, and in some instances degrading, and grammatically incorrect, articles to Plaintiff was a substantial disparagement to her name and profession, and caused or at least are likely to cause serious harm to the reputation and good name of Plaintiff.

61. Indeed, a Google search of Jacklyn Wilferd returns one of the most offensive articles published and falsely attributed to Plaintiff: "PORN STAR SYDEY COLE CALLED HER FAVOURITE WINES (ENG)," attributing to Plaintiff statements such as:

- Sydney Cole … <u>What I like the most about her are the boobs.</u> She doesn't have big boobs, but they look magnificent. Her cup size is 32B, but the nipples are the ones that matter. She has big areolas that are the perfect size for sucking. Although she has puffy nips, they are hard and pointy. … <u>She will surely change a bit in the next period, as she is only 20 years old now and her body will still change for the next couple of years, but I'm sure she will look just as hot, if not hotter.</u>

- Teenage girls can be the worst. <u>They're hot as hell with loud mouths and bitchy attitudes. They know they are jailbait yet still walk around in tiny shorts with their ass cheeks hanging out.</u> Then they hit 18 and are fully legal for you to watch in porn. <u>The naughtiest among them love being on camera and showing that fresh pussy to the world.</u> That's when teenage girls become the absolute best!

62. Defendants caused these abhorrent, sexist and degrading statements to be published without justification, privilege or other defense.

63. As a direct and proximate cause of Defendants' misconduct, Plaintiff suffered significant injury and damages.

## COUNT VIII – DECLARATORY JUDGMENT
### (against all Defendants)

64. Plaintiff incorporates by reference paragraphs 1 through 63 as if stated fully herein.

65. An actual controversy has arisen and exists between the parties, insofar as there is a real dispute caused by the assertion by Plaintiff of a right in which she has a definite interest, specifically: (a) to access and conduct an inspection of the books and records of Digital Equity,

(b) an accounting, and (c) payment of profits arising out of the sale of wines.com, a product sale under the Profit Agreement between the parties.

66. This action is not duplicative of nor seeks relief the same as other causes of actions, but seeks a declaration to which Plaintiff is entitled that further clarifies the rights of the parties as to the subject matter herein.

67. Thus, Plaintiff seeks a declaration requiring Defendants to provide access to, and an inspection and accounting of, the books and records of Digital Equity, and pay fifty percent of any profits from the sale of wines.com to Plaintiff.

68. The requested declaration is necessary for the parties to be certain about their rights, duties, obligations, status and legal relations, and to preserve those rights, which without speedy relief might otherwise be impaired or lost.

69. The parties have actual, present, antagonistic interests, which are properly before and justiciable by the Court, and the relief sought is not merely for legal advice from the Court or answers to question propounded by curiosity.

**WHEREFORE**, Plaintiff prays that the Court enter a judgment:

(a) declaring that Defendants are required to provide access to, and an inspection and accounting of, the books and records of Digital Equity, within thirty (30) days of the date of the order of the Court;

(b) awarding damages, including compensatory and punitive damages, to Plaintiff in an amount to be determined at trial, and trebled damages pursuant to Cal. Civ. Code § 3345(b);

(c) awarding Plaintiff her costs and any reasonable attorneys' fees; and

(d) granting Plaintiff such further and other relief as the Court may deem just and appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Fayetteville, Georgia
       May 5, 2020

Respectfully submitted,

JACKLYN WILFERD, by and through her attorneys,

By:/s/Kelli B. Hooper
Kelli B. Hooper (GA Bar No. 106130)

KBH Law, Inc.
1415 Highway 85 North, Suite 310-336
Fayetteville GA, 30214
(678) 466-9846 (p) (800) 466-5015 (f)
kelli@kbhooper.com

John H. Ray, III (pro hac vice motion pending)
Ray & Counsel, P.C.
10044 South Leavitt Street
Chicago, IL 60643
(312) 772-6420 (p) (312) 940-5831 (f)
jray@rayandcounsel.com

*Attorneys for plaintiff Jacklyn Wilferd*