IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **JACKLYN WILFERD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION NO. |
| **DIGITAL EQUITY, LLC, and** | ) | 1:20-cv-01955-SDG |
| **KHURAM DHANANI**, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**PARKER, HUDSON, RAINER & DOBBS LLP**

Ronald T. Coleman, Jr.
Georgia Bar No. 177655
Paul R. Barsness
Georgia Bar No. 597107
Erik J. Badia
Georgia Bar No. 327905
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
rtc@phrd.com
prb@phrd.com
ebad@phrd.com
Telephone: (404) 523-5300
Attorneys *for Defendants*

Defendants move to dismiss all counts of Plaintiff's Amended Complaint pursuant to F.R.C.P. 12(b)(6). The merger clauses in the contracts at issue, as well as the *specific disclaimer* of the representations cited by Plaintiff, bar the fraudulent inducement and oral contract claims (Counts III & V). The agreements' plain language doom the other breach of contract and fiduciary duty claims (Counts I, II, & IV). Defendants are immune from defamation liability (Count VII). Count VIII's request for a declaratory judgment must be dismissed, because the rights of the parties have already accrued. Finally, because Georgia law governs and because there are no derivative claims, her elder abuse claim (Count VI) also fails.

## SUMMARY OF ALLEGATIONS RELEVANT TO THIS MOTION

Plaintiff purchased the domain name "wines.com" in 1994. (Plaintiff's Amended Complaint ("Compl."), Dkt. 17, at ¶ 2.) In 2018, Plaintiff was introduced to Mr. Dhanani through a third-party, and Mr. Dhanani and Plaintiff discussed the potential sale of wines.com, as well as a potential profit-sharing arrangement for the sale of certain items through the website. (*Id*. ¶¶ 17-19.) Mr. Dhanani offered to draft the agreements, and Plaintiff agreed. (*Id.* ¶ 19.) Mr. Dhanani sent Plaintiff two contracts. (*Id.*) The "Domain Name Purchase Agreement," ("Purchase Agreement") was for the sale to Digital Equity ("Digital") of the Domain Name wines.com and accompanying website and intellectual property. (*Id.*) The "Profit Sharing

Agreement" ("PS Agreement") was an arrangement between Plaintiff and Digital that entitled Plaintiff to fifty percent of net profits after expenses generated by Digital on revenue derived from an enumerated list of seven specific items. (*Id*.) Significant for this case, the subsequent sale of the Domain Name is not one of the seven specific items. (PS Agreement attached to Compl. as Exhibit A, at p.1, § 1.)

Plaintiff and Digital executed each agreement on July 15, 2018. (*Id.* ¶ 24.) Both agreements have identical, crystal clear merger and anti-amendment language:

> Entire Agreement. This Agreement constitutes and contains the entire agreement and understanding between the Parties hereto with respect to the subject matter herein and supersedes any prior or contemporaneous oral or written agreements, representations, discussions, proposals, understandings, and the like respecting the subject matter hereof. This Agreement cannot be changed, modified, amended, or supplemented in any way, shape or form whatsoever, without exception, including in writing or orally.

(Purchase Agreement attached to Compl. as Exhibit A, at p. 2, § 7; PS Agreement, at p. 1, § 9.) And the PS Agreement further confirms, in direct contradiction of Plaintiff's allegations, that no representations are made regarding the operation of the business or potential financial performance:

> Representations and Warranties of Company. Company makes no guarantees, representations or warranties to Individual of any kind whatsoever, including but not limited to potential revenue/profits, operations, performance, financial outcome, and/or results of any kind.

(PS Agreement, at p. 1, § 5.)

At some point in 2019, third party blog posts appeared on the website, one of which contained content about a pornographic film actor. (Compl., ¶ 32.) Mr. Dhanani sold the Domain Name to a third party in August 2019. (*Id.* ¶ 37.)

## APPLICABLE LEGAL STANDARD

To state a valid claim, the Complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation' of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Indeed, when considering a motion to dismiss, a court can begin by identifying pleadings that, because they are no more than conclusions are not entitled to the assumption of truth. *Id.* at 1950.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. Plaintiff cannot state a plausible contract claim against defendants.

In Counts II-III, Plaintiff claims that the PS Agreement, as well as an alleged oral agreement preceding the PS Agreement, entitle her to 50% of the profits from the sale of the Domain Name. Both counts must be dismissed as a matter of law.

Georgia law governs Plaintiff's state law claims. The two controlling contracts at issue provide that Georgia law should apply, "without regard to conflict of laws or principles" to "[a]ny legal actions concerning disputes arising out of this [agreement]...." (Purchase Agreement, p. 2, § 6; PS Agreement, p. 2, § 10.) Even if the court were to perform a conflicts of laws analysis, the Georgia Supreme Court has made clear that in "the absence of a statute, [] at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia." *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 729 (2017). This principle applies to tort claims, including for fraud, and contract claims. *Mt. Hawley Insurance Co. v. East Perimeter Pointe Apartments, LP*, 409 F.Supp.3d 1319, 1327 (N.D. Ga. 2019).

### 1. Any alleged oral agreement (Count III) was clearly barred by the merger clause in both written contracts.

The subject matter of the purported oral agreement—the sale of wines.com and profit sharing—is the same as that contained in the two written agreements. The merger clauses bar Plaintiff's claim of an oral contract on the same subject matter.

The purpose of a merger clause is to ensure that written instruments executed by the parties constitute the final and exclusive agreement on the subject matter at issue. *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001). As such, any prior

negotiations, representations, and discussions on the same subject matter not included in the written agreement are extinguished. *Id.*

Critically, a comprehensive merger clause, like the one found in the two agreements at issue here, extinguishes any pre-contract negotiations or representations on the same *subject matter*—it need not address, disclaim, or cover every specific point raised in such discussions. *See Bulford v. Verizon Business Network Services, Inc.*, 970 F.Supp.2d 1363, 1369 n.3 (N.D. Ga. 2013) (noting that where there are allegations of competing contracts and the final contract has a comprehensive merger clause, the "question is if the latter agreement was intended to be an exhaustive agreement regarding the *subject matter*") This makes logical sense, as reading a merger clause so narrowly would allow a party to simply claim that similar, but slightly distinct, promises were made orally by the other party and thus, those promises constituted a separate oral agreement, defeating the entire purpose of a merger clause. *See First Data POS, Inc*., 273 Ga. at 795.[1]

_____

[1] *See also National ID Recovery, Inc. v. LifeLock, Inc.*, 2009 WL 10699688, *3 (N.D. Ga. Oct. 7, 2009) ("the scope of an agreement's subject matter, at least with regard to the application of a merger clause, is typically interpreted to be broad enough to encompass any prior arrangement between the parties involving the provision of the same type of goods or services"); *Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp.*, 892 F.Supp. 1520, 1538 (N.D. Ga. 1995) (holding that plaintiff's attempt to limit the application of a merger clause to cover only the items explicitly mentioned in the contract was "an overly restrictive reading" of the merger clause).

Here, Plaintiff's alleged "oral agreement" is nothing more than discussions about what the parties *might* do in the future, while the two Agreements are the final expression of what the parties contractually *agreed* to do. The claimed oral agreement is clearly based upon statements made *prior* to the parties' execution of the two agreements. Plaintiff alleges that Mr. Dhanani made certain representations "[t]o *induce* Wilferd to *sign the agreements*." (Compl., ¶ 23.) Those same representations form the basis of Plaintiff's claim for the formation of the purported oral agreement. (*Compare* Compl., ¶ 23 *with* Compl., ¶ 55.) Indeed, the Complaint explicitly states that one of the terms of the parties' purported oral contract was that "Wilferd *would enter into both* the Domain and Profit Agreements with Digital Equity…." (Compl. ¶ 55) (emphasis added.) The alleged oral agreement covers the same subject matter contained in the two written agreements—the sale of wines.com, as well as the parties' obligations and duties regarding creating content on the wines.com website and sharing certain limited profits. (PS Agreement at p. 1, §§ 1,3); *see National ID Recovery, Inc.*, 2009 WL 10699688 at *3; *Health Services Centers, Inc.*, 257 Ga. at 379; *Int'l Telecomms. Exch. Corp.*, 892 F.Supp. at 1538. Accordingly, the purported oral agreement is barred by the valid merger clauses in the PS and Purchase Agreements. *First Data POS, Inc.*, 273 Ga. at 795.

The Georgia Court of Appeals rejected a claim virtually identical to Plaintiff's claim (Compl., ¶¶ 55-56) in *Skipper Sams, Inc. v. Roswell-Holcomb Associates, Ltd.*, 247 Ga. App. 237, 242 (2000).[2] There, the plaintiffs assumed a lease to acquire a restaurant in a shopping center. Prior to entering into the deal, agents of the defendants (who owned the shopping center) made four specific representations to the plaintiffs about what the defendant-landlord planned to do with the shopping center, including a promise to renovate the façade of all the stores. *Id.* at 238-39. The promises never materialized, and plaintiff's restaurant ultimately failed. *Id.* at 240-41. Plaintiffs sued defendants, arguing that the defendant's agents' representations constituted a separate oral contract that was not covered by the merger clause in the lease. *Id.* at 241. The Court of Appeals held that the merger clause clearly barred such an argument and "[t]hus, any contentions regarding the breach of a separate, oral agreement consisting of the four representations must also fail." *Id.* at 242.

Furthermore, even *if* it could be said that there was an oral agreement between the parties prior to the execution of the two written contracts at issue (there was not),

---

[2] *See also Rutland v. State Farm Mutual Automobile Insurance Company*, 2010 WL 11493717, *4 (N.D. Ga. Jan. 22, 2010) (holding that "the merger clause bars the existence of a separate oral contract for insurance" on the same subject matter).

that oral contract was superseded by the two written agreements covering the same subject matter. *Health Service Centers, Inc.*, 257 Ga. at 379.

Plaintiff's amended allegations/legal argument that Mr. Dhanani individually is not covered by the merger clauses because he personally promised to perform certain acts in the future and he is not named in the agreements (Compl. ¶¶ 22-23) fail as a matter of law. *See Greenwald v. Odom*, 314 Ga. App. 46, 57 n.5 (2012) ("We have held that an agent of a contracting party can rely upon a merger clause contained in the contract to preclude claims against the agent for his or her alleged representations made before formation of the contract") (citing *Tampa Bay Financial, Inc. v. Nordeen*, 272 Ga. App. 529, 534-35 (2005)); *Eco Solutions, LLC v. Verde Biofuels, Inc.*, 2011 WL 13135279, *16-17 (N.D. Ga. Feb. 1, 2011) (holding that agents of entity that signed the agreement could properly invoke the agreement's merger clause to bar allegations based on pre-contractual representations).

The Georgia Court of Appeals, in *Tampa Bay Financial*, rejected Plaintiff's argument. The Court explained:

> Although Delamont claims that the merger clause cannot apply to Smith and TBF because they were not parties to the underlying agreement, the trial court found that they "were the [Company], or their agents and employees agents of the company" and thus fell within the agreement's terms. The court also found that "the merger clause clearly includes any representations made by Smith and Baker regarding this transaction" because the "only parties [Delamont] had any dealings with related to this merger were Smith and Baker," and "the merger

> clause would be meaningless if it did not cover representations made by [them]." Moreover, because the pre-signing promises Delamont relies upon contradict the terms of the agreements, they were not collateral to the agreement containing the merger clause.

*Id.* at 534-35.

Just as in *Tampa Bay Financial*, here: 1) the pre-signing promises Plaintiff attempts to rely on contradict the terms of the two written agreements; 2) Mr. Dhanani was the "only part[y] [Plaintiff] had any dealings with related to" the two agreements; and 3) the "merger clause would be meaningless if it did not cover representations made by [Mr. Dhanani]." *Id.* This is particularly true here, because, as Plaintiff admits, Mr. Dhanani is the sole member of Digital (Compl. ¶ 62.) and thus, the only person who *could* make representations on its behalf.

Finally, Plaintiff's allegation that Defendants breached the duty of good faith and fair dealing based on the oral agreement necessarily falls with her failed breach of contract claim. *See Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 419 (2012) (implied covenant cannot provide an independent basis for liability)

## 2. The plain language of the PS Agreement bars Count II.

Plaintiff claims that the resale of the Domain Name to a third-party is a "product" covered under section one of the PS Agreement. (Compl. ¶ 52.) Looking at the plain language of the contract, such a claim necessarily fails. Under Georgia law, contract interpretation is a matter for the court to decide. O.C.G.A. § 13-2-1;

*Gill v. B & R Intern., Inc.*, 234 Ga. App. 528, 530 (1998). If there is no ambiguity on the face of the contract, then the Court "enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction." *Id*. The court should look "only to the contract to find the parties' intent." *Id*. Even if the court identifies the potential for ambiguity, then "the existence or non-existence of an ambiguity is itself a question of law" for the court to decide. *Id*. Ambiguity "is not to be created by lifting a clause or portion of the contract out of context, nor are we to call forth doubt or make hypercritical constructions." *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869 (2003) (citations omitted).

Here, the contract terms are clear, and no ambiguity exists that could create uncertainty as to the true intention of the parties. The Purchase Agreement was exclusively for Digital's purchase of the Domain Name and related intellectual property (Purchase Agreement, p. 1, §§ 1-3), and the PS Agreement is a limited contract specifying seven enumerated items the parties contemplated Digital would sell, subject to profit sharing. (PS Agreement, p. 1, § 1.) Under the PS Agreement, Plaintiff would share in "profits after expenses that are generated by Company ***directly* from product sales, advertising sales, accessory sales, affiliate sales, ticket sales, tour sales and commission sales**." (*Id*.) (emphasis added). No inclusive or exemplary language appears in this provision, and the resale of the

Domain Name is clearly not included in this exclusive list. (*See id.*) This list must be construed as an exclusive list of the *only* seven items that Plaintiff was entitled to a share of Digital's profits in under the PS Agreement. (*Id.*)  In fact, nowhere in the PS Agreement is the Domain Name, nor the sale of intellectual property assets such as the Domain Name, even mentioned. (*See generally* PS Agreement.) Accordingly, the plain language of the agreement shows that the resale of the Domain Name was clearly not contemplated as part of the PS Agreement. *Gill*, 234 Ga. App. at 530.

Even if the court decides that a potential for ambiguity on the face of the contract exists here, it can be easily resolved through the standard interpretation rule of "*Expressio unius est exclusio alterius*," or the "express mention of one thing implies the exclusion of another." *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 39 (2005). Where a contract provides an exhaustive list of specifically enumerated items, items not on the list are excluded or otherwise not covered under the contract. *George L. Smith II Georgia World Cong. Ctr. Auth. v. Soft Comdex, Inc.* ("*Comdex*"), 250 Ga. App. 461, 464, 550 S.E.2d 704, 706 (2001). In *Comdex*, a plaintiff sued for injuries that occurred in a parking deck during a computer convention. The Authority sought indemnification, but Comdex argued they were not liable under the parties' licensing agreement because the injuries did not occur on the "licensed premises," which included only those facilities explicitly mentioned

in an exclusive list. 250 Ga. App. at 463. The Georgia Court of Appeals affirmed the no liability decision because it was not mentioned in the exclusive list. The Court found that the "list of 'Facilities Licensed' in the contract is presumed to exclude" any facility not specifically listed. *Id*. at 464. Here, as in *Comdex*, because the exhaustive list of enumerated items does not include the sale of intellectual property assets such as Domain Name, the contract is presumed to exclude it.

Furthermore, a Domain Name is an intangible intellectual property asset and not a "product" as that term is normally understood. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (holding that plaintiff's ownership interest in a domain name was "an intangible property right").[3] Words in a contract are to be "taken and understood in their plain, ordinary, and popular sense." *Imaging Sys. Intern., Inc. v. Magnetic Resonance Plus, Inc.*, 241 Ga. App. 762, 763 (2000) (citations and quotation marks omitted). In the ordinary sense of the word, a domain name is not a "product." Black's Law Dictionary defines a "product" as "[s]omething that is distributed commercially for use or consumption and that is usu[ally] (1) tangible

---

[3] *See also* IRS Memorandum, Treatment of Costs to Acquire Internet Domain Names for Use in Taxpayer's Trade or Business (2015), *available at* https://www.irs.gov/pub/irs-wd/201543014.pdf ("Costs incurred by a taxpayer to acquire a generic domain name or a non-generic domain name from the secondary market for use in the taxpayer's trade or business must be capitalized under § 263(a) as *an intangible asset*") (emphasis added).

personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption." (11th ed. 2019). Thus, a "product" in ordinary English refers to a tangible piece of personal property, like bottles of wine purchased on wines.com, not an intangible property asset such as the Domain Name itself. *Id.*; *Kremen* 337 F.3d at 1030. Courts have reached the same conclusion. *See, e.g.*, *GOT I, LLC v. XRT, Inc.*, 2017 WL 1036483, *3 (N.D. Ga. 2017) (noting that a "'product' is '[a]n **article or substance that is manufactured or refined for sale**,'" and that a "'product' cannot be 'based on or derived from'" intangible intellectual property, such as a trademark) (emphasis added).

Additionally, Plaintiff's failure to state a claim for breach of the written contracts likewise dooms her claim that Defendants breached the duty of good faith and fair dealing. *See Layer*, 319 Ga. App. at 419. It is not a breach of said duty to do what is allowed under the contract, and nothing in either contract prohibited Digital from re-selling the Domain Name. *See Megel v. Donaldson,* 288 Ga. App. 510, 516 (2007) ("no basis for finding the breach of a fiduciary or confidential relationship when the funds expended and actions taken were authorized by the Agreement.").

**B. The merger clauses bar Plaintiff's fraudulent inducement claim and rescission is not an option.**

In Count V, Plaintiff alleges that Mr. Dhanani fraudulently induced her to enter into the two agreements. (Compl., ¶¶ 23-24, 67-72.) To recover on a claim for fraudulent inducement, Plaintiff must prove: (1) a false representation or omission of a material fact, (2) scienter, (3) intention to induce the party claiming fraud to act or refrain from acting, (4) justifiable reliance, and (5) damages. *Cives Corp. v. Se. Inv., LLC (LA)*, 2014 WL 11822760, at *2 (N.D. Ga. Apr. 14, 2014).

As a matter of law, "a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations." *See First Data POS, Inc.*, 273 Ga. at 795. In addition, the Supreme Court of Georgia has made clear that an allegedly defrauded party is "estopped from asserting that he relied upon the other party's misrepresentation" when that party affirms a contract with a merger clause. *Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007). Here, both the PS and Purchase agreements contain a clear and explicit merger clause. (PS Agreement, p. 1, § 9; Purchase Agreement, p.2, § 7.) Plaintiff has unquestionably affirmed the PS Agreement, as she seeks to recover for a breach of the contract. (Compl. ¶ 53.) And while the Complaint was amended to now seek rescission of the Purchase Agreement, Plaintiff continues to affirm and rely upon that agreement to both provide the consideration for the PS Agreement (which she seeks to enforce) and to ground the fiduciary duty

claim. (Compl. ¶ 63.) Accordingly, Plaintiff's fraudulent inducement claim, based on alleged representations made prior to the execution of the two contracts fail as a matter of law for two independent reasons. (Compl. ¶¶ 18, 23, 55, 68-69); *First Data POS, Inc.*, 273 Ga. at 795; *Ekeledo*, 281 Ga. at 819. Courts have repeatedly held that such merger clause language precludes claims of fraudulent inducement. *See e.g., Prince Heaton Enter., Inc. v. Buffalo's Franchise Concepts, Inc.,* 117 F. Supp. 2d 1357, 1361 (N.D. Ga. 2000).[4]

Even without a merger clause, "[s]tatements that directly contradict the terms of [an] agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract." *Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 189 (2011). Plaintiff cannot, as a matter of law, have reasonably relied upon any alleged representations, such as promises of future gain, that are directly contrary to the written language of the contract to which she agreed and now seeks to enforce. (PS Agreement, p. 1, § 5 ("Company makes no guarantees, representations or warranties to Individual of any kind whatsoever, including but not

---

[4] *See also Charter Med. Mgmt. Co. v. Ware Manor, Inc.,* 159 Ga. App. 378, 384 (1981) (merger clause precluded plaintiff from proving reasonable reliance on representations not contained in contract); *Liberty v. Storage Trust Props., L.P.,* 267 Ga. App. 905, 910 (2004) (where a merger clause establishes that written contract represents all of the parties' agreement plaintiff cannot prove justifiable reliance on alleged misrepresentations not in the contract).

limited to potential revenue/profits, operations, performance, financial outcome, and/or results of any kind.")). Further, for the same reasons discussed *supra*, Plaintiff's claims that Mr. Dhanani cannot invoke the merger or disclaimer clauses must fail. *See Tampa Bay Financial*, 272 Ga. App. at 534-35.

Plaintiff's claim also fails for the additional reason that fraudulent inducement cannot be based on mere "puffery" or promises of anticipated future performance. *Extreme Crafts VII, LLC v. Cessna Aircraft Co*., 479 F. App'x 247, 249-50 (11th Cir. 2012) (affirming summary judgment where plaintiff's allegations on fraudulent inducement claim involving the resale of an aircraft amounted to puffery or concerned future performance, including a statement that plaintiff "would definitely net a minimum of $1 million profit upon the sale of the [aircraft] contract"); *McLemore v. Southwest Georgia Farm Credit, ACA*, 230 Ga. App. 85, 88 (1998) ("A claim of fraud cannot be based upon statements that promise future action."). Likewise, opinions cannot be the basis for a fraudulent inducement claim. *Williams v. Lockhart*, 221 Ga. 343, 344 (1965) ("Where representations amount to mere expressions of opinion, they do not, though untrue, constitute false representations" that can support an action for fraudulent inducement).

Plaintiff's fraudulent inducement claims are based upon on the alleged statements by Mr. Dhanani that "Wilferd *would* receive $100,000 *within thirty*

*days*," that Mr. Dhanani "*would* invest $200,000-300,000 of his own money into *further developing* wines.com," that he "had a 'team' who *could help further develop* the website *to a $3-5 million valuation 'fast*,'" that he nor Digital would not (in the future) "sell the domain for less than $3-4 million," that Mr. Dhanani told Plaintiff a $1,000,000 profit was "achievable" out of "their arrangement," and that the website would be operated as "a '*cash cow*.'" (Compl. ¶¶ 18, 23, 68-69) (emphasis added.) Such statements amount to opinion (e.g. the $3-5 million valuation, that a million dollar profit was achievable, that the website would be a "cash cow") and projections of future events (e.g. Mr. Dhanani *would* (later) invest $200,000-300,000 to *further* develop wines.com in the future, Plaintiff *would* have a right to approve any sale of wines.com *in the future*). Plaintiff's allegations therefore cannot support a claim for fraudulent inducement. *Extreme Crafts VII, LLC*, 479 F. App'x at 249-50; *McLemore*. 230 Ga. App. at 88; *Williams*, 221 Ga. at 344.

Plaintiff's claim for fraudulent inducement fails, and because she has not pled (nor could she) that she was prevented from reading the two agreements, she has no valid basis to seek rescission (Compl., ¶ 71) of the Purchase Agreement. *Novare Grp., Inc*., 290 Ga. at 188-89 (holding that where alleged oral representations were made prior to execution of a written agreement that contradicted those oral

representations, to "be able to rescind a contract, the fraud must be of a nature that the [Plaintiff] w[as] deprived of an opportunity to read the agreements").

Plaintiff's attempt to rescind is also barred by her claim to sue for damages on the PS Agreement. She cannot rescind part of a transaction any more than she could rescind part of an agreement. "The transaction, if rescinded, must be rescinded as a whole". 27 Williston on Contracts § 69:48 (4th ed. 2020). If the rescinding party "freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence," and such acquiescence waives any claim for rescission, as the acquiescing party "will be held to have waived any objection, and to be conclusively bound by the contract as if no fraud or mistake had occurred." *N4D, LLC v. Passmore*, 329 Ga. App. 565, 568 (2014) (quoting *Jernigan Auto Parts v. Commercial State Bank*, 186 Ga. App. 267, 271 (1988)).[5] Further, to effect a "complete rescission, all the parties must be returned as nearly as possible to the

---

[5] *See also Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 543 (1996) (denying plaintiff's rescission claim where a plaintiff purchased a pet food business based on false representations regarding the legality of business' operations, the plaintiffs "engaged in a series of management decisions, as herein listed above, which can be construed only as an attempt to continue to operate [the business] and to do so in a profitable manner," and that those "actions are totally incompatible with contract rescission.").

*status quo ante*; there is no room for one party to have its cake and eat it, too." *R.W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 871 (2004) (quoting *Corbitt v. Harris*, 182 Ga. App. 81, 82, 354 S.E.2d 637 (1987)).

Here, Plaintiff specifically alleges that the Purchase Agreement and PS Agreement were a package deal and that each was required to fulfil the promises contained in the other. (Compl., ¶ 24 ("[The PS and Purchase Agreement] were executed together, which is why the sale of the domain and website wines.com was for only $50,000—an extreme discount to market value *to facilitate the profit sharing arrangements between the parties*.") As such, Plaintiff was required to either affirm both agreements and sue for damages on each, or rescind both contracts. Plaintiff's attempt to affirm the PS Agreement while simultaneously seeking to rescind the allegedly interrelated Purchase Agreement is "clearly inconsistent" with her alleged repudiation of the Purchase Agreement. *N4D, LLC*, 329 Ga. App. at 568. Further, Plaintiff's attempt to affirm the PS Agreement, which she claims entitles her to profits based on both sales through wines.com as well as the sale of wines.com, is an "attempt to continue to operate [wines.com] and to do so in a profitable manner," and is inconsistent with her claim for rescission. *Orion Capital Partners, L.P.*, 233 Ga. App. at 543. Accordingly, Plaintiff's attempt to "have [her] cake and eat it, too" cannot be allowed. *R.W. Holdco, Inc.*, 267 Ga. App. at 871.

Furthermore, since Plaintiff has clearly affirmed the PS Agreement, she cannot now attempt to rescind that agreement. *Megel*, 288 Ga. App. at 515 (holding that once party affirmed contract by suing for damages a later amendment and attempt to claim rescission failed). Finally, rescission of the Purchase Agreement is impossible since Defendants no longer have possession or title to the Domain Name (Compl., P 37). *See In re Charming Castle, LLC*, No. AP 08-70007, 2011 WL 3797741, at *14 (Bankr. N.D. Ala. Aug. 18, 2011) (sale rescission impossible when property has been resold); *Nickell v. Bank of America, N.A.*, 2012 WL 394467, *7 (W.D. Ten. Feb. 6, 2012) (same).

### C. Defendants do not owe Plaintiff a fiduciary duty (Count IV) and could not have breached any such duty.

Neither agreement can plausibly be read to create a fiduciary or confidential relationship between the parties, and because Plaintiff's alleged oral contract claim fails, there is no basis whatsoever for such a relationship between the parties.

A fiduciary or confidential relationship arises only "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Mail & Media, Inc. v. Rotenberry*, 213 Ga. App. 826, 828 (1994) (quotation marks omitted). An ordinary arms-length transaction does not create a fiduciary

21

duty. *Id*. at 828-29 ("The mere fact that one reposes trust and confidence in another does not create a confidential relationship. 'In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.'") (quoting *Kienel v. Lanier*, 190 Ga. App. 201, 203 (1989)). Further, a written agreement can establish that there is no confidential or fiduciary relationship between parties. *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 537 (1997) (holding "that no confidential relationship existed where '[t]he franchise contract expressly provided for an independent contractor relationship between Hub Cap Heaven and its franchisees.'"). Finally, even if a duty exists, a party cannot be found to have breached that duty where the party simply did what the terms of the agreement allows. *Megel,* 288 Ga. App. at 516.

Plaintiff claims that she was both a profit-sharing partner with Digital under the PS Agreement (Compl. ¶ 62), and a joint venture partner with both defendants based on the oral agreement. (*id.*) Both allegations fail as a matter of law. First, as demonstrated in Section A2 *supra*, there was no oral agreement regarding a joint venture between the parties, and even if there was, it was superseded by the merger clauses in the two agreements. Second, the plain language in Section 6 of the PS Agreement confirms that Plaintiff is an independent contractor and is not and never was an "agent[], shareholder[], or employee" of Digital. The Plaintiff and

Defendants are sophisticated parties (*see* Compl. ¶ 2), who negotiated and entered into two arms-length transactions—one for the sale of the Domain Name from Plaintiff to Digital, granting *all* right, title, and interest to Digital, and the other for Digital to share the profits from certain, limited items with Plaintiff working as an independent contractor. (*See generally* PS and Purchase Agreement.) Plaintiff's allegation that "Wilferd contributed the domain and website wines.com" to this alleged joint venture (Compl., ¶ 63), is directly contradicted by the plain language of Section 1 of the Purchase Agreement. She did not contribute the domain; she sold it. Accordingly, there is no basis for Plaintiff's breach of fiduciary duty claim because Plaintiff's Complaint as a matter of law does not allege (nor could it) any special relationship between the parties that would give rise to such a duty. *Mail & Media, Inc.*, 213 Ga. App. at 829; *Allen*, 225 Ga. App. at 537.

Nor could Defendants have breached any such duty. Plaintiff alleges that Defendants breached their fiduciary duty to her by failing to provide an accounting, by failing to pay her profits from the resale of the wines.com Domain Name, by failing to invest certain funds into wines.com, and by self-dealing. (Compl., ¶¶ 64-65.) None support her cause of action here. First, notwithstanding complaints of timing, Plaintiff admits that Defendants have already agreed to provide an accounting. (Compl. ¶ 39, 40.) Second, the PS Agreement does not require

Defendants to share any funds from the resale of the wines.com Domain Name with Plaintiff. (*See* Sec. A1.) Third, Plaintiff's claim of an alleged oral agreement fails (*see* Sec. A2), and nothing in either Agreement requires the Defendants to invest any funds into wines.com. (*See generally* both agreements.) As explained above, because Plaintiff was not a "partner" in Digital, nor even an agent, but rather, an independent contractor, there is no "self-dealing" in Mr. Dhanani's rightful possession of any funds from Digital. *Mail & Media, Inc.*, 213 Ga. App. at 829; *Allen*, 225 Ga. App. at 537. Accordingly, even if a fiduciary relationship could possibly exist here (it cannot), the conduct alleged would not breach that duty. *Megel*, 288 Ga. App. at 516.

### D. The Communications Decency Act ("CDA") bars the defamation claim.

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA "preempts state law that is contrary to [] subsection [(c)]." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). The host of allegedly defamatory content under the CDA is immune where the host did not author the content. *See, e.g.*, *Fair Housing Council, etc. v. Roommates.com*, 521 F.3d 1157, 1162–1163 (9th Cir. 2008) ("Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties").

While Plaintiff now alleges that Mr. Dhanani and Digital "authored, participated in the creation of or otherwise caused and approved" the allegedly defamatory content (Compl., ¶ 84), this claim cannot withstand the plausibility test under *Twombly*, 550 U.S. at 556-57. Plaintiff's "upon information and belief" allegation that the posts were "not independently created by any third party" (Compl., ¶ 33.) is not plausible on its face and need not be accepted by the Court. *Twombly*, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"); *see also Tamanji v. Nationstar Mortg. LLC*, No. 4:14-CV-222-HLM, 2014 WL 12513893, at *2 (N.D. Ga. Dec. 12, 2014) ("[s]ince the seminal decisions in Twombly and Iqbal, 'for purposes of a Rule 12(b)(6) motion to dismiss, [courts] do not have to take as true allegations based merely upon information and belief.'") (internal citation omitted). Plaintiff's "information and belief" is mere speculation that, because Mr. Dhanani had previously discussed with Plaintiff hiring third-party subcontractors to produce content for the website (Compl., ¶ 36.), it is *possible* that Mr. Dhanani spammed his own website with articles about a pornographic actor. Plaintiff's defamation claim must fail. *Fair Housing Council*, 521 F.3d at 1162; *Almeida*, 456 F.3d at 1321.

### E. Plaintiff's elder abuse claim fails because Georgia law applies and, separately, because there is no viable underlying claim of financial abuse.

The plain language of both agreements state that Georgia law applies ***but not***

Georgia's conflict of law rules. (Ex. A, p. 2, § 6; Ex. B, p. 2, § 10.) Thus, the traditional Georgia rule of *lex loci delicti* is inapplicable. Any dispute related to the Purchase Agreement or PS Agreement must be decided under Georgia law without any regard to conflict of law principles. Even assuming, *arguendo*, that California law applies, Plaintiff's claim for elder abuse in Count VI must fail because that law requires some predicate financial abuse perpetrated by Defendants. *See Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 879 (N.D. Cal. 2010) (noting that under California's elder abuse act, a plaintiff "must demonstrate that a defendant: (1) *subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse*; and (2) acted with recklessness, malice, oppression, or fraud in the commission of the abuse.") (emphasis added). An accounting, fiduciary duty, declaratory judgment, or even defamation claim is not enough. Because all of Plaintiff's breach of contract and fraud claims must fail, she cannot maintain a claim for elder financial abuse, either. *See Paslay v. State Farm Gen. Ins. Co.,* 248 Cal. App. 4th 639, 657 (2016) (to establish a "wrongful use" the plaintiff "must demonstrate a breach of the contract, or other improper conduct").

**F.  Plaintiff cannot maintain an accounting claim.**

Count I seeks an accounting and inspection of the books and records of Digital based on two theories. Though Plaintiff alleges this count is against "all defendants,"

it is unclear how this claim could relate to Mr. Dhanani personally. First, Plaintiff reliance on the alleged fiduciary relationship providing such a right (Compl., ¶ 44.) fails because as demonstrated in Sections A 2 and C, *supra*, no such relationship exists or existed. Additionally, Plaintiff claims a right under the PS Agreement to certain financial information upon request. (Compl., ¶ 45.) However, Plaintiff admits Defendants have already agreed to provide her this information. (Compl. ¶ 39, 40.) Because of this, and because Plaintiff's substantive contract and tort claims fail, Plaintiff lacks standing to bring a stand-alone accounting claim in this Court. *Reynolds v. Alabama Dept. of Transp.*, 2013 WL 6230481, *2 (M.D. Ala. Dec. 2, 2013) (holding that Plaintiff's allegations for an accounting could not demonstrate that he had an injury-in-fact which would meet constitutional Article III standing requirements). A plaintiff "'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Corbett v. Transportation Security Administration*, 930 F.3d 1225, 1239 (11th Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Additionally, Plaintiff cannot meet the amount in controversy requirement of 28 U.S.C. § 1332(a) with a complaint for only an accounting, making dismissal appropriate. *See Broadway v. State Farm Mutual Automobile Ins. Co.,* 364 F.Supp.3d 1329, 1342 n.17 (M.D. Ala. 2019) (holding that a federal district court

has the discretion to decline supplemental jurisdiction over a Plaintiff's remaining claims that do not meet the amount in controversy threshold).

### G. Plaintiff's declaratory judgment claim (Count VIII) cannot survive.

Plaintiff claims that a declaratory judgment action is necessary based on her (1) accounting claim; and (2) her claim that she is entitled to payment on the already-concluded sale of the Domain Name in August 2019. (Compl., ¶ 87.) First, Plaintiff admits in her Complaint that Mr. Dhanani agreed to provide the requested accounting so there is no dispute regarding the contractual language. (Compl. ¶¶ 39, 40.) Second, as demonstrated in Section F *supra*, Plaintiff's claim for an accounting fails or should not be heard in this Court. Accordingly, no declaratory judgment action is proper on such a claim. *See Hicks v. Walker County School Dist.*, 172 Ga. App. 428, 429 (1984) (noting that with no actual controversy a declaratory judgment action is moot and cannot survive).

Third, because the contract's express provisions unequivocally refute Plaintiff's nonpayment allegations, the request for declaratory judgment must be dismissed. *See Kirkland v. Ocean Key Assocs.*, No. 07-10030-CIV, 2007 WL 3343083, at *4 (S.D. Fla. Nov. 8, 2007) ("[D]ismissal is generally appropriate where there are no factual issues and the outcome is clear as a matter of law."). The request impermissibly duplicates Plaintiff's breach of contract allegations. *Abecassis v.*

*Eugene M. Cummings, P.C.*, 467 F. App'x 809, 814 (11th Cir. 2012) (dismissing claim for declaratory judgment as attempt to reargue contract issue).

Finally, Plaintiff's claim for a declaratory judgment on the already-consummated 2019 sale of the Domain Name must also fail because the rights of the parties have already accrued, and, at most, Plaintiff's claim amounts to a breach of contract action already addressed above. *Baker v. City of Marietta*, 271 Ga. 210, 214 (1999) ("Where the rights of the parties have already accrued and the party seeking the declaratory judgment does not risk taking future undirected action, a declaratory judgment would be advisory."). Here, there is no risk to Plaintiff of "taking future undirected action"—either Plaintiff is entitled to a share of the sale of the Domain Name (which sale has already occurred), or she is not. *See id.*

### H. Plaintiff's derivative claims for attorneys' fees and punitive damages cannot survive on their own.

Any derivative claim for attorney's fees and punitive damages flowing from Plaintiff's alleged claims (*see Compl.*, Prayer for Relief) fail because these are not stand-alone causes of action. *See, e.g., Massey v. Kelly, Inc.*, 742 F. Supp. 1156, 1158 (N.D. Ga. 1990) ("the Georgia statute for punitive damages is not grounds for an independent cause of action").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant its Motion to Dismiss and dismiss all claims with prejudice.

Respectfully submitted, this 25th day of June, 2020.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Paul R. Barsness*
Ronald T. Coleman, Jr.
Georgia Bar No. 177655
Paul R. Barsness
Georgia Bar No. 597107
Erik J. Badia
Georgia Bar No. 327905
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
prb@phrd.com
ebad@phrd.com
Telephone: (404) 523-5300
*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** has been prepared in conformity with LR 5.1, N.D. Ga., with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 25th day of June, 2020.

*/s/ Paul R. Barsness*
Paul R. Barsness

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the within and foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to all counsel of record.

This 25th day of June, 2020.

/s/ Paul R. Barsness
Paul R. Barsness