# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| JACKLYN WILFERD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 20-CV-01955-SDG |
| v. | ) | |
| | ) | |
| DIGITAL EQUITY, LLC, and KHURAM DHANANI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

John H. Ray, III (admitted pro hac vice)
Ray & Counsel, P.C.
10044 South Leavitt Street
Chicago, IL 60643
(312) 772-6420 (p) (312) 940-5831 (f)
jray@rayandcounsel.com

Kelli B. Hooper (GA Bar No. 106130)
KBH Law, Inc.
1415 Highway 85 North, Suite 310-336
Fayetteville GA, 30214
(678) 466-9846 (p) (800) 466-5015 (f)
kelli@kbhooper.com

*Attorneys for plaintiff Jacklyn Wilferd*

## **INTRODUCTION**

As to each count in the amended complaint, Defendants repeatedly fail to establish any basis for dismissal under Rule 12(b)(6).  As to each count, Defendants' motion is nothing more than a rash citation spree of cases that simply do not apply.  The motion should be summarily denied.

## **STATEMENT OF FACTS**

The facts relevant to this action are substantially and specifically alleged in the amended complaint, which is incorporated by reference herein.  [D.E. No. 17, at ¶¶ 10-91 (Am. Compl.).]

## **STANDARD OF REVIEW**

To survive Rule 12(b)(6), a complaint need only "be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (Rule 12(b)(6) "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the allegations.); Pinson v. JPMorgan Chase Bank, Natl Ass'n, 942 F.3d 1200, 1215 (11th Cir. 2019) (plausibility does not require "a surefire claim, no[r] one likely to succeed").

## **ARGUMENT**

**A.  DEFENDANTS FAILED TO ESTABLISH ANY BASIS TO DISMISS THE BREACH OF CONTRACT CLAIMS IN THIS ACTION.**

1.  Defendants Failed to Establish that the Limited Merger Clause Bars

1

<u>the Separate, Contemporaneous Oral Agreement at Issue.</u>

### a.   *Defendants cannot show the "subject matter," of the Profit Agreement precludes the Oral Agreements.*

Under Count III for breach of contract and good faith and fair dealing concerning the Oral Agreement, Defendants argue that the limited merger clause in the Domain and Profit Agreements entered into by Digital Equity somehow precludes the separate agreements made by Dhanani, which they alleged cover the same "subject matter." [D.E. No. 26-1, pp.5-9 (Defs.' Mem.).] This argument, however, is without merit. "In order for the merger rule to apply … [a] the parties of the merging contracts must be the same and [b] the terms of those contracts must completely cover the same subject matter and [c] be inconsistent." <u>Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church</u>, 650 S.E.2d 359, 362 (Ga. App. 2007). Defendants fail on all counts.

<u>First</u>, Defendants' argument fails as to Dhanani, because he is not a party to the written agreements, discussed <u>infra</u>. <u>See</u> Section A.1.b. <u>Second</u>, Defendants' arguments fail because they fail to show the "subject matter" of either the written or oral agreements, but merely blithely proclaim, that "[t]he alleged oral agreement covered the same subject matter".[1] [D.E. 26-1, at p.7 (Defs.' Mem.).]

---

[1] And yet, Defendants themselves claimed in pleadings that "[n]othing in either agreement limited Defendants' ability to re-sell the Domain Name" [D.E. No. 16-

Defendants' proclamations of overlapping subject matter, however, are false. In this case, there is little question, that Plaintiff alleged subject matter in the Oral Agreement different from the written Profit and Domain Agreements, that:

> Defendants agreed that Dhanani (1) would invest $200,000-$300,000 of his own money into further developing wines.com, and (2) in the arrangement, they would split all profits not otherwise covered by the Profits Agreement, including to the extent not included in the Profits Agreement, from the sale of the domain and website. Further, Defendants agreed that (3) they would not sell the domain for less than $3-4 million, (4) Wilferd would have the right to approve any sale, and (5) prior to any sale, Defendants would actively operate the website as a "cash cow" to produce monthly revenue—all constituting the "Oral Agreement."

[D.E. No. 17, at ¶ (Am. Compl.).]  Neither the Profit nor Domain Agreement, covers (1) Dhanani's individual capital investment into wines.com, (2) profits not covered by the Profit Agreement (which Defendants argue include profits from the sale of the website), (3) conditions on the sale price of the domain, (4) sale approval rights, or (5) the operations of the website.  Indeed, the only "subject matter" cited by Defendants are Paragraphs 1 and 3 of the Profit Agreement, which, no matter how broadly interpreted, only cover as Defendants contend, profit sharing from "an enumerated list of seven specific items," [D.E. No. 26-1, at p.3 (Defs.' Mem.) (emphasis added)], and Plaintiff's sweat equity contribution.

---

1, at p.3 (Defs.' Mem.)], as of course "nothing" addressed the subject matter of a sale—contrary to their newfound claims to try to support a motion to dismiss.

Defendants cannot point to any part of the Profit or Domain Agreements to show subject matter covered by, not merely related to, the separate Oral Agreement, which precludes operation of the merger clause here.  See, e.g., Adeduntan v. Hosp. Auth. of Clarke Cty., No. 3:04-CV-65 (CDL), 2006 WL 1934872, at *5 (M.D. Ga. July 11, 2006) ("[T]hese contracts are separate contracts dealing with different (albeit related) subject matters, the merger clause in the PRRA does not extinguish the Release.").

In identifying the intent of the parties, under Bulford v. Verizon Business Network Servs., Inc., 970 F. Supp. 1363, 1369 n.3 (N.D. Ga. 2013), cited by Defendants, to interpret the scope of the merger clause, the Court must be guided in the first instance by the plain language of the agreement, Health Serv. Centers, Inc. v. Boddy, 359 S.E.2d 659, 661 (Ga. 1987), and be able to point to some clause in the Agreement that suggests that it was used by the parties as the exhaustive agreement on the subject (as the court did in Health Serv., addressed infra).  But there is nothing here, certainly nothing that indicates exhaustiveness of the Domain or Profit Agreements on the subjects of operating capital, conditions or approval rights of sale of the website and domain, or anything concerning the regular operations of the website.  In this regard, the written agreements are silent, suggesting there was in fact more agreed upon, not less.  To be sure, if Defendants

are correct that the agreements "are the final expression of what the parties contractually *agreed* to do," [D.E. No. 26-1, at p.7 (Defs.' Mem.)], Defendants should have no trouble identifying to the Court what the agreements say on operating capital for the website, paying for things like hosting fees, backup costs, upgrades and marketing.  The suggestion that the parties *agreed to do nothing* (since the written agreements say nothing) is incredulous.  There is no rational basis to suggest the contemporaneous Oral Agreement on these issues, or the others raised by Plaintiff, was merged into or superseded by the Domain and Profit Agreements and certainly not Health Serv., cited by Defendants, which relied upon a broad unlimited merger clause, which expressly stated "This lease contains the entire agreement between the parties and supercedes all prior discussions and agreements between the parties.  Any such prior agreements shall, from and after the date hereof, be null and void."  359 S.E.2d at 660 (emphasis added).  No such language exists here.

Health Serv. merely underscores the fact that despite the verbose claims, none of Defendants' cases address the facts at issue here, nor suggest anything other than that broad merger clauses should not be overly restricted.  Those cases say nothing as limited merger clause at issue here.  Indeed, like Health Serv., while Defendants claim that Skipper Sams, Inc. v. Roswell-Holcomb Assocs., Ltd., 543

S.E.2d 765, 768 (Ga. App. 2000) "rejected a claim virtually identical," even a casual read of the merger clause at issue in Skipper Sams shows that it was "virtually the opposite" of the one at issue here, precluding what is lacking here: "all previous negotiations … whether oral or in writing between the parties hereto or their respective representatives or any other person purporting to represent Landlord or Tenant" and containing an express acknowledgement that "[t]enant acknowledges that it has not been induced to enter into this Lease by any representations not set forth in this Lease." Id. at 667-68 (emphasis added). Stripped of the hyperbole, Defendants cannot point to any "virtually identical" language in the Domain or Profit Agreement that would justify the same result.

Third, Defendants make no effort to show that the Oral Agreement was inconsistent, to establish preclusion by the merger clause, as required by Georgia law. Atlanta Integrity, 650 S.E.2d at 362; Diamondhead Corp. v. Robinson, 240 S.E.2d 572, 574 (Ga. App. 1977) ("a collateral oral agreement, not inconsistent with a written contract, is not necessarily merged into the written contract").

### b. Defendants cannot show the merger or disclaimer clauses cover Dhanani, who is not a party to the agreements.

Further under Count III, Defendants argue that irrespective of the fact that defendant Dhanani was not a party to the agreements, he is nonetheless covered by the merger and disclaimer clauses in those agreements, citing principally Tampa

6

Bay Fin., Inc. v. Nordeen, 612 S.E.2d 856 (Ga. App. 2005). This argument is

without merit. First, Defendants' reliance on Tampa Bay is misplaced, because

that case relied on the express language of the merger and disclaimer clause at

issue in that case—which expressly included language, not present here—that:

> Shareholder's decision to invest in the stock has been based solely upon the information provided and by the information requested by the Shareholder in writing, and no oral statement **by the [Company], or their agents and employees**

612 S.E.2d at 860 (emphasis added). That is why Tampa Bay repeatedly referred

to the individuals being "agents and employees," not because that is the law

generally in Georgia, but because that was the specific language of the agreement

between the parties. Id. Tampa Bay simply found that where a merger clause

included "agents and employees," regardless whether they signed, agents and

employees were covered. Id.; see also Curtis Inv. Co., LLC v. Bayerische Hypo-

und Vereinsbank, AG, 341 F. App'x 487, 493 (11th Cir. 2009) (clause applying to

"any other party to this Agreement or any other Credit Documents or any advisor

to any such other party") (cited by Eco Sols., LLC v. Verde Biofuels, Inc., No.

4:09-CV-0125-HLM, 2011 WL 13135279, at *16 (N.D. Ga. Feb. 1, 2011)).

Second, after Tampa Bay, in HA & W Fin. Advisors, LLC v. Johnson,

supra, the Georgia Court of Appeals rejected Defendants' position:

> By its plain language, the merger clause applies only to prior representations

made by the parties to the employment agreement, and Johnson and HAW
Financial are the sole parties.  And, as noted above, when the parties
intended to make a specific paragraph of the employment agreement
applicable to non-party affiliates of HAW Financial such as HAW Wealth,
they did so expressly, and thus "we must presume that [their] failure to do so
[in the merger clause] was a matter of considered choice."

612 S.E.2d at 864.  The parties here used the same language Johnson rejected as
sufficient to cover non-signatories.  [See, e.g., D.E. No. 17-1, at p.4, ¶ 9 (Prof.
Agr.) ("This PS Agreement constitutes and contains the entire agreement and
understanding between the Parties hereto …."); id. at p.4, ¶ 5 ("This PS Agreement
is not binding upon Company's respective representatives …." (emphasis added)).

Had Defendants wanted an "agents and employees" clause, they could have
added one, which would have made Tampa Bay's holding apropos.  The Court
cannot do that for them.  Thomas v. T & T Straw, Inc., 561 S.E.2d 495, 497 (Ga.
App. 2002) ("Parties should be entitled to contract on their own terms without the
courts saving one side or another from the effects of a bad bargain.").

As Defendants cannot show the breach of contract claims must be dismissed,
and have no other argument for the good faith claims, Layer v. Clipper Petroleum,
Inc., 735 S.E.2d 65, 73 (Ga. App. 2012), cited by Defendants, is inapplicable.

    2.    <u>Defendants Failed to Establish That the Plain Language of the Profit
Agreement Excludes Website and Domain Sales as "Product Sales."</u>

Under Count II for breach of contract and the covenant of good faith and fair

dealing against Digital Equity concerning the Profit Agreement, Defendants argue that the "plain language" of the Profit Agreement does not include a sale of the website and domain.  They argue product sales that are "not clearly included in th[e] exhaustive list," are "contemplated as part of the P[rofit] Agreement."  [D.E. No. 26-1, at pp.11-14 (Defs.' Mem.).]  This argument proves too much, of course. No specific "products" or other "sales" were listed under the seven profit-sharing categories, and therefore according to Defendants, no "products" are included, reading "product sales" right out of agreement, which is clearly not correct. George L. Smith II Georgia World Cong. Ctr. Auth. v. Soft Comdex, Inc., 550 S.E.2d 704, 705–06 (Ga. App.2001), cited by Defendants, is inapposite.  In George L., the contract defined the term "Facilities Licensed," whereas here "product sales" is not defined, precluding the operation of expressio unis est exclusio alterius, as Defendants argue.

Appreciating this failure, Defendants further argue that the sale of a domain, as here, is not a "product" sale.  They do so by pretending that the website www.wines.com does not exist, as alleged, and that the sale was only the domain name, wines.com.  But as alleged, Defendants sold both, together as one "product." [D.E. No. 17, at ¶¶ 13-16, 38 (Am. Compl.).]  Furthermore, the one case in this Circuit to address this issue squarely, found, contrary to Defendants' claims, that

"**websites, in and of themselves, are products**".  Gridiron.com, Inc. v. Nat'l

Football League Player's Ass'n, Inc., 106 F. Supp. 2d 1309, 1314 (S.D. Fla. 2000)

(emphasis added) (citing, inter alia, James v. Meow Media, Inc., 90 F. Supp. 2d

798, 810 (W.D. Ky. 2000) ("computer codes and programs are construed as

'tangible property' for tax purposes and as 'goods' for UCC purposes")).

Indeed, the majority view, while recognizing that websites and domains are

not tangible property in the traditional "dictionary" sense, should be treated and

protected as such under the law.  See, e.g., Ground Zero Museum Workshop v.

Wilson, 813 F. Supp. 2d 678, 697 (D. Md. 2011) (citing cases).

Regardless, in this case, interpreting contract language, context matters.

And Defendants concede that a product includes "something that is distributed

commercially for use".  Black's Law Dictionary (11th ed. 2019).  As alleged, the

joint venture between the parties was to sell a developed website and domain

commercially—a "product" that does not exist separately.  [D.E. No. 17, at ¶¶ 13-

16 (Am. Compl.).]  The ordinary meaning of "product" is whatever is developed

for commercial distribution, which, here was a website and domain name.

As Defendants cannot show the breach of contract claims must be dismissed,

and have no other argument for the good faith claims, Layer, 735 S.E.2d at 73,

cited by Defendants, does not apply.  Further, because the breach of fiduciary

claims based upon the written agreement address breaches beyond the mere sale of the website and domain, Megel v. Donaldson, 654 S.E.2d 656 (Ga. App. 2007), cited by Defendants, also does not apply.

## B.   DEFENDANTS FAILED TO ESTABLISH ANY BASIS TO DISMISS THE CLAIMS OF FRAUD AGAINST DHANANI.

Under Count V for fraud against defendant Dhanani, Defendants again seek to rely on the merger clause in the Profit Agreement to argue a lack of reliance. But again, first, this argument fails because Dhanani was not a party to the Profit Agreement, and cannot as a matter of law rely on that provision or any alleged contradiction.  Johnson, 782 S.E.2d at 864.  Notably, Defendants rely on the Profit Agreement, because as to the Domain Agreement, which Plaintiff seeks to rescind, "a party who validly seeks rescission of the contract is not bound by the merger clause."  W.C. Bradley Co. v. itelligence, Inc., No. 4:17-CV-208 (CDL), 2018 WL 2944428, at *6 (M.D. Ga. June 12, 2018).  And, second, Defendants' argument fails because, in part, the fraud upon which Plaintiff seeks to rescind the Domain Agreement is not covered by Profit Agreement,[2] making its merger clause inapplicable.  Likewise, as discussed above, Defendants have not provided and cannot provide any "subject matter" discussed in the agreements that would allow

---

[2] [D.E. No. 17, at ¶ 69 (Am. Compl.) ("prospective buyers would not work with him unless the domain was transferred to Digital Equity").]

the limited merger clause in this case to operate as a bar to any alleged fraud.  See

supra, Section A.1.a.

Indeed, First Data POS, Inc. v. Willis, 546 S.E.2d 781 (Ga. 2001), cited by

Defendants, is instructive in finding merger clause preclusion only by express

citation to the provisions of the written agreement covering the very alleged

fraudulent oral representations:

> the Agreement's terms state with absolute clarity that First Data was under
> no obligation to continue carrying on COIN's business and could, at any
> time and without notice to appellees, "reorganize or merge [COIN] out of
> existence or cease the sale of any of [COIN's] products or services."
> Despite this express contractual provision, appellees' claim is based entirely
> upon parol evidence of contradictory representations that are purported to
> have been made before the Agreement's execution.

Id. at 784; see also Prince Heaton Enterprises., Inc. v. Buffalo's Franchise

Concepts, Inc., 117 F. Supp. 2d 1357, 1361 (N.D. Ga. 2000) ("Liability for this

allegation is expressly waived by the above cited sections of the parties'

agreement." (emphasis added)).[3]  As the court stated in First Data, only "[a] person

---

[3] Defendants' other cases also contain merger clauses beyond the one here.
Charter Med. Mgmt. Co. v. Ware Manor, Inc., 283 S.E.2d 330, 336 (Ga. App.
1981) ("no representations or agreements oral or otherwise ... not embodied herein
or attached hereto shall be of any force and effect."); Liberty v. Storage Tr.
Properties, L.P., 600 S.E.2d 841, 843 (Ga. App. 2004) ("[T]here are no
representations, warranties, or agreements by or between the parties which are not
fully set forth herein and no representative of Owner or Owner's Agents is
authorized to make any representations, warranties, or agreements other than as
expressly set forth herein").

who has received written **disclosure of the truth** may not claim to rely on contrary oral falsehoods." Id. at 785-86 (emphasis added).  Here, Defendants can point to no such disclosure to warrant operation of the merger clause, even if it did apply to Dhanani, which it is does not.

Next, Defendants turn to the disclaimer clause of the Profit Agreement, which no different than the merger clause, does not apply to Dhanani at all, but only covers representations by "the Company," not "employees and agents."  [D.E. No. 17-1, at p.4 & ¶ 5 (Profit Agr.).]  And even if it did apply, which it does not, at a minimum, it does not create a preclusive conflict with an agreement in which "the Company" made no representations regarding "potential revenue/profits, operations, performance, financial outcome, and/or results of any kind"—which are all directed to future financial results—that Dhanani claimed had personal operating capital to invest (when he did not), had a team to work on the website (when he did not) and had interested advertisers (when he did not), or for that matter that "prospective buyers would not work with him unless the domain was transferred to Digital Equity," which was false, all which have nothing to do with future financial results.  [See D.E. No. 17, at ¶¶ 16(1)-(3), 17(1)-)(2) and (4)-(5) (Am. Compl.).]  Regardless of the present intent exception that covers all the alleged fraud, where the representations are not in conflict with the agreement, as

13

to the specific non-financial results representations discussed above, Novare Grp.,
Inc. V. Sarif, 290 Ga. 186, 189 (2011), cited by Defendants, does not apply.

Failing at precluding reliance, Defendants seek to collapse all eight separate
fraudulent statements upon which the fraud claim is based, Defendants allege that
"all" the statements alleged against Dhanani were "mere puffery" or promises of
future performance.  [D.E. No. 26-1, at pp.17-18 (Defs.' Mem.).]  But, third, this
argument fails because Defendants merely recite half of the law in Georgia,
omitting the common "exception for 'promises made with a present intention not
to perform or where the promisor knows that the future event will not take place,'"
Stamey Cattle Co., LLP v. Wright, No. 5:17-CV-147, 2019 WL 722597, at *16
(S.D. Ga. Feb. 19, 2019) (quoting Tr. v. O'Connor, No. 1:10-CV-1438-AT, 2012
WL 12836517, at *8 (N.D. Ga. Sept. 28, 2012)), at issue here.

Plaintiff substantially alleged that Dhanani himself was a fraud, who had no
ability or intention of ever delivering on his promises to provide investment
capital, an operating team to develop the website, interested advertisers, and
operate the website as a "cash cow" to achieve specific short-term profit targets—
none of which he could have realistically claimed, but intentionally lied.  [D.E. No.
17, at ¶¶  25-29, 68-70(Am. Compl.).]  That is fraud in Georgia.  Stamey, 2019 WL
722597, at *16.  Indeed, it is not an "opinion" to claim to have actual advertisers

14

and a team of professionals when you know you do not.  To be sure, Extreme

Crafts VII, LLC v. Cessna Aircraft Co., 479 F. App'x 247, 249 (11th Cir. 2012),

cited by Defendants, expressly relied upon the lack of any evidence that defendant

had knowledge the statements were false when made in affirming summary

judgment.  Id. at 249 ("statements were true when they were made and/or he had

no information to suggest otherwise"); see also Williams v. Lockhart, 144 S.E.2d

528, 529 (Ga. App. 1965) ("the vendee using no artifice or fraudulent scheme").

Fourth, contrary to Defendants' claims that the parties engaged in two

separate transactions [D.E. 26-1, at p.23 (the parties "entered into two arms-length

transactions") (Defs.' Mem) (emphasis added)], Defendants now argue that

Plaintiff cannot rescind the Domain Agreement without rescinding the Profit

Agreement "any more than she could rescind part of an agreement," i.e., they must

be treated as one transaction or agreement, not two.  [Id., at p.19.]  In so doing,

Defendants argue that "Plaintiff specifically alleges … [the agreements] were a

package deal," endorsing that view to gain dismissal.  But Defendants fail to

comprehend the "package deal" allegation.  Plaintiff alleges that parties could and

would have (but for at least part of Defendants' fraud)[4] entered only into the Profit

Agreement without the Domain Agreement, but not the Domain Agreement

---

[4]  See supra, n.2.

15

without the Profit Agreement (which is Plaintiff's allegation as to them being entered together).  Under Plaintiff's allegations, the only "inconsistency" would be to rescind the Profit Agreement and not the Domain Agreement (not the other way around).  And Defendants' refusal to return the domain [D.E. No. 17, at ¶ 31 (Am. Compl.)], substantially limits a claim of waiver, as alleged here.  See, e.g., Krayev v. Johnson, 757 S.E.2d 872, 876-78 (Ga. App. 2014) (""[A] party 'need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable." (citing Mitchell v. Backus Cadillac–Pontiac, 618 S.E.2d 87 (Ga. App. 2005)). Indeed, Plaintiff's cases about "cake and eat it, too" make no sense here because the "cake" is the website and domain, and "eating it too" would be keeping the $50,000 that Plaintiff is willing to return to rescind the agreement, not keeping the Profit Agreement.[5]

Last, rescission is not "impossible," as Defendants contend, where a claim for fraudulent transfer exists, as here under O.C.G.A. § 18-2-70, et. seq., entitling Plaintiff to avoid the sale to a third party.  Neither In re Charming Castle, LLC,

---

[5] To be clear, Plaintiff is not seeking to rescind the Profit Agreement, as Defendants claim [D.E. No. 26-1, at p.21 (Defs.' Mem.)], only the Domain agreement.

No. AP 08-70007, 2011 WL 3797741, at *14 (Bankr. N.D. Ala. Aug. 18, 2011),

nor Nickell v. Bank of Am., N.A., No. 11-2006-STA-DKV, 2012 WL 394467, at

*7 (W.D. Tenn. Feb. 6, 2012), cited by Defendants, which address Louisiana and

Tennessee law respectively (not Georgia), address this issue.

## C.   DEFENDANTS FAILED TO ESTABLISH THAT PLAINTIFF'S ALLEGATIONS OF FACT OF A FIDUCIARY RELATIONSHIP ARE INSUFFICIET AS A MATTER OF LAW.

Under Count VI for breach of fiduciary duty, Defendants argue that contrary

to the allegations in the amended complaint, because this action involves "[a]n

ordinary arms-length transaction," it fails to establish a fiduciary relationship.

[D.E. No. 26-1, at pp.21-23 (Defs.' Mem.).]  The problem, of course, is that this,

like so much of Defendants' motion, is false, and wholly divorced from anything

resembling the allegations in the amended complaint.  And further, it is premature

at this point to decide this question of fact.  See, e.g., Cushing v. Cohen, 746

S.E.2d 898, 908 (Ga. App. 2013) ("[T[he existence of a confidential or fiduciary

relationship is generally a factual matter for the jury to resolve.").

Under Georgia law, a business relationship that rises to the level of a joint

venture is sufficient to establish a fiduciary relationship.[6]  Optimum Techs. v.

---

[6] Under Georgia law, a fiduciary relationship "may be created by law, contract, or the facts of a particular case."  Douglas v. Bigley, 628 S.E.2d 199, 204 (Ga. App. 2006).  Generally, "[t]he existence of a confidential or fiduciary relationship is a

Henkel Consumer Adhesives, 496 F.3d 1231, 1249 (11th Cir.2007).

"'Nomenclature is not dispositive,' and 'whether a partner in a joint venture is a party to a legal partnership depends on the rights and responsibilities assumed by the joint venturers, *i.e.*, a sharing of the fruits and losses with an equal right, expressed or implied, to direct and control the conduct of the enterprise.'" Id. at 1249 (citing Jerry Dickerson Presents, Inc. v. Concert/S. Chastain Promotions, 579 S.E.2d 761, 768 (Ga. App. 2003)).

Here, as alleged, the parties agreed to and to a limited extent did in fact, work together, contributing content, time and effort, to develop the website and domain wines.com under a profit-sharing agreement, "shar[ing] with [Plaintiff] 50% (fifty percent) of net profits."[7] [D.E. 17, at ¶¶ 17-24, 62-63 (Am. Compl.); No. 17-1, at p.4 & ¶ 1 (Profit Agr.).] Furthermore, in that very Profit Agreement, Plaintiff also received rights to a 25% distribution in any acquisition of Digital Equity based upon its stock sale value in the transaction. [D.E. No. 17-1, at p.4 &

_____

question for the jury." Maree v. ROMAR Joint Venture, 763 S.E.2d 899, 911 (Ga. App. 2014). Moreover, "[w]hile an independent contractor relationship does not necessarily give rise to a fiduciary relationship, it does not preclude a fiduciary relationship either." See, e.g., N.Y. Life Ins. Co. v. Grant, No. 5:14-CV-101 (MTT), 2016 WL 1241186, at *10, (M.D. Ga. Mar. 28, 2016).

[7] Indeed, Digital Equity had an obligation to disclose to Plaintiff "financial information upon request, including revenue, sales, expenses, screenshots, and profits," far from an arms-length separate business arrangement. [D.E. No. 17-1, at p.4 & ¶ 4 (Profit Agr.).]

¶ 7 (Profit Agr.).]  As to control, Defendants agreed to provide Plaintiff equal rights to determine the sale price of the domain and website, along with substantial control over the development of the content posted.  [D.E. No. 17, at ¶¶ 23, 63 (Am. Compl.).]  These allegations of joint enterprise are sufficient to establish a fiduciary relationship (regardless whether they establish a joint venture).

As to Defendants' arguments that there was no fiduciary relationship, they largely regurgitate previously discredited arguments.  First, as addressed above, there is no basis to conclude at this point that no oral agreement regarding a joint venture was agreed to, and no basis as a matter of law to find that the limited merger clause superseded one (certainly not as to Dhanani, who was not a party to the agreements).  Second, merely establishing an independent contractor relationship is not sufficient to defeat a fiduciary relationship.  N.Y. Life Ins. Co. v. Grant, supra.  Allen v. Hub Cap Heaven, Inc., 484 S.E.2d 259, 264 (Ga. App. 1997), cited by Defendants, does not rely solely upon the independent contractor relationship (nor suggest it alone was dispositive), but the franchise relationship— not present here—and went on to expressly hold that "the parties were engaged in a transaction with each other in an effort to further their own separate business objectives," defeating a confidential relationship under Georgia law, which is also not the case here, as addressed above.  Id. at 264.

<u>Third</u>, there is no basis in the amended complaint (nor in fact) to argue that "Plaintiff and Defendants are sophisticated parties," as Defendants claim; to the contrary, the amended complaint alleges that Plaintiff engaged Defendants specifically because of her lack of necessary experience, and need for a "potential business partner to help further develop wines.com, as Dhanani claimed to have substantial capital he would contribute to the business, as well as experience in developing domains for sale as commercial products." [D.E. No. 17, at ¶ 17 (Am. Compl.).] <u>Fourth</u>, Plaintiff did not sell the domain <u>wines.com</u> in a vacuum, as Defendants claim, but transferred the domain "to facilitate a sale;" indeed, the transfer was executed as part of two agreements "executed together, which is why the sale of the domain and website <u>wines.com</u> was for only $50,000—an extreme discount to market value to facilitate the profit- sharing arrangements between the parties." [<u>Id.</u>, at ¶¶ 2, 24.]  Transferring a website valued independently for $3 million for $50,000 as part of a profit-sharing agreement can hardly be said to be arms-length sale—it the architype of a joint venture.

Alternatively, Defendants argue that their bad faith refusal to comply with their contractual obligations and misappropriation, as alleged in the amended complaint, attempting to conceal profits from their profit sharing and joint venture partner, refusing to this day to provide a proper accounting, is somehow not a

breach of fiduciary duty, relying principally on <u>Megel v. Donaldson</u>, 654 S.E.2d 656, 662 (2007), where "the funds expended and actions taken were authorized by the Agreement." <u>Id.</u> at 662.  The opposite is true here, where the misappropriation of funds was expressly contrary to the profit sharing obligations.  [D.E. No. 17, at ¶¶ 49, 51-52, 64-65 (Am. Compl.); D.E. No. 17-1, at p.4 & ¶ 1 (Profit Agr.).] Apart from failing to demonstrate anything remotely resembling the case in <u>Megel</u>, Defendants further fail to offer anything else, beyond prior arguments that have been discredited.  As addressed previously, Plaintiff did not admit Defendants agreed to provide an accounting, this is false.  The Profit Agreement requires profit sharing on "product sales," and the website and domain that Defendants sold is a "product."  Plaintiff properly alleged an oral agreement, which Defendants breached by refusing to provide operating investment capital, among other breaches.  Dhanani's transfer from Digital Equity to himself of funds from his concealed below-market sale of <u>wines.com</u>, which were proceeds of the joint venture, without disclosing his conduct, is the definition of self-dealing. Defendants' citation to <u>Mail & Media, Inc. v. Rotenberry</u>, 446 S.E.2d 517 (Ga. App. 1994), to refute self-dealing is incomprehensible, as the court in that case expressly found "[t]here is no evidence funds were appropriated for either the use of Mail & Media or any employee or principal of that corporation" <u>id.</u> at 520,

which is not at all the case here, as Dhanani appropriated the sales proceeds.

**D.   DEFENDANTS FAILED TO ESTABLISH THE DEFAMATION ALLEGATIONS ARE IMPLAUSIBLE OR BARRED.**

Under Count VII for defamation, Defendants argue that their defamation is somehow protected under the Communications Decency Act of 1996 ("CDA"), because, they argue, the allegation that Defendants authored the defamatory content purportedly "cannot withstand the plausibility test."  [D.E. No. 26-1, at pp.24-25 (Defs.' Mem.).]  Defendants, however, do not understand the concept of plausibility, nor the allegations in the amended complaint, a common defect in their motion.  First, contrary to Defendants' suggestion, a court may not outright reject "information and belief" pleading.  See, e.g., Boateng v. Ret. Corp. of Am. Partners, L.P., No. 1:12-CV-01959-JOF, 2013 WL 12061901, at *4 (N.D. Ga. Mar. 5, 2013) ("Twombly's 'plausibility' standard did not prevent a plaintiff from pleading facts based upon information and belief".).  Regardless, the allegations of authorship and/or participation in the publication by Defendants are not pled on information and belief.  [See D.E. 17, at ¶¶ 81, 84 (Am. Compl.).]

Second, Plaintiff's allegation of publication does not rest merely on the fact that Defendants proposed the very misconduct they are now accused of committing (which is alone sufficient to show both opportunity, intent and plan to base an inference of action in conformity therewith), but also that Defendants (1) have a

history of fabricating alleged foreign individuals to conceal their own publications, (2) had no significant knowledge of the wine industry to develop intelligent content, (3) had no meaningful experience in any industry to deliver on their promise of developing traffic, (4) needed to post content to be in a position to continue their fraud, (5) were the only ones, besides Plaintiff, with access to the website to post the alleged internal blog content, and (6) the posts did not remotely resemble "spam" on unrelated topics, but were incompetent attempts to use salacious pornography (listing a pornographic actor's ***favorite wine***) to increase traffic that no other person had any motive to post, except Defendants.  [D.E. No. 17, at ¶¶ 25-29, 31-36 (Am. Compl.).]

Third, pleading acts sufficient to support motive, opportunity, intent and plan, as alleged under the circumstances here, give rise to a strong inference of Defendants' authorship and/or participation in the publication, as alleged [D.E. No. 17, ¶¶ 82, 84 (Am. Compl.)],[8] which is sufficient to support a claim under the CDA.  See, e.g., Capital Corp. Merch. Banking v. Corp. Colocation, Inc., No. 6:07-CV-1626ORL19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) ("The CDA provides immunity for the removal of content, not the creation of the

---

[8] While Defendants suggest the direct-authorship allegations are new, and only added "now," this is (as is now a disturbing pattern) simply false.  [See D.E. No. 1, at ¶¶ 59, 62 (Compl.).]

content." (citing <u>Fair Housing Council of San Fernando Valley v. Roomates.com,</u>

<u>LLC</u>, 521 F.3d 1157, 1163 (9th Cir.2008)); <u>Internet Brands, Inc. v. Jape</u>, 760

S.E.2d 1, 3-4 (Ga. App. 2014) ("[A]s to content that it creates itself, or is

'responsible, in whole or in part' for creating or developing, the website is also a

content provider," and therefore not immune.).

## E.   DEFENDANTS FAILED TO ESTABLISH THAT THE CONTRACT CHOICE OF LAW PROVISION APPLIES TO PLAINTIFF'S TORT-BASED CLAIMS OF FRAUD AND MISAPPROPRIATION.

Under Count VI for elder abuse under California's statute, Defendants argue

that California law does not apply because of the contract choice of law provision

between Plaintiff and Digital Equity (but not Dhanani).  [D.E. No. 25-26 (Defs.'

Mem.).]  Because Dhanani did not sign the agreement, this argument cannot apply

to him, addressed <u>supra</u>.  But more fundamentally, in Georgia, "[t]ort claims are

only included where a contract's choice of law provision's intent covers <u>any and</u>

<u>all claims arising out of the relationship between the parties</u>." <u>Duncan Pipeline,</u>

<u>Inc. v. Walbridge Aldinger Co.</u>, No. CV411-092, 2013 WL 1338392, at \*16 (S.D.

Ga. Mar. 29, 2013) (emphasis added) (citing <u>Young v. W.S. Badcock Corp.</u>, 474

S.E.2d 87, 88 (Ga. App. 1996)).  The agreements at issue here contain the same

generic language—lacking the "any and all claims arising out of the relationship"

language required [D.E. No. 17-1, at p.5 & ¶ 10 (Profit Agr.)]—rejected in <u>Duncan</u>

Pipeline to defeat lex loci delicti, applying the statute of the foreign state relevant to the tort, which in this case is the California elder abuse statute.  See, e.g., Northstar Healthcare Consulting, LLC v. Magellan Health, Inc., No. 1:17-CV-1071-ODE, 2019 WL 4805558, at *47 (N.D. Ga. Jul. 10, 2019).  And notwithstanding the underlying breach of contract and fiduciary duty issues, the wrongful misappropriation at issue here is still a tort, see, e.g., Faircloth v. A.L. Williams & Assocs., Inc., 426 S.E.2d 601, 604 (Ga. App. 1992) (citing DCA Architects, Inc. v. Am. Bldg. Consultants, Inc., 417 S.E.2d 386, 388 (Ga. App. 1992)), to which Georgia defers to the California statute.

Last, contrary to Defendants' claims, Plaintiff sufficiently pled the alleged breach of contract and fiduciary duty,[9] fraud and other improper conduct by Defendants, see supra Sections A-C, and therefore, even under Paslay v. State Farm Gen. Ins. Co., 248 Cal. App. 4th 639, 657 (2016), cited by Defendants, Plaintiff may maintain an action for financial elder abuse under California law.

## F.   DEFENDANTS FAILED TO ESTABLISH ANY BASIS UPON WHICH TO DISMISS THE ACCOUNTING CLAIM.

---

[9] No California case has stated that breach of a fiduciary duty is insufficient to support a claim of elder abuse—Defendants cite none, and Paslay v. State Farm Gen. Ins. Co., infra, cited by Defendants, makes clear that the statute covers "misappropriating funds to which an elder is entitled under a contract," relying directly on a breach of fiduciary duty case, Wood v. Jamison, 167 Cal. App. 4th 156, 164–65 (2008).

Under Count I for an accounting, Defendants argue principally that "Plaintiff admits Defendants have agreed to provide her this information," warranting dismissal.  [D.E. No. 26-1, at pp.27 (Defs.' Mem.).]  This is false.  In the exact paragraph cited by Defendants, Plaintiff alleged "Defendants have never agreed to provide any accounting." [D.E. 17, at ¶ 40 (Am. Compl.).]  Likewise, Defendants' claim that "no [fiduciary relationship] cists or existed," is belied by the pleadings, and as addressed above, the law in Georgia, where as here, the parties, including Dhanani,[10] entered into a joint venture.  [See supra, Section C; see also D.E. No. 17, at ¶¶ 62-63 (Am. Compl.); Optimum Techs., 496 F.3d at 1249.]

Defendants' "standing" argument is without merit.  It relies on dismissal of the contract and tort claims, to which Defendants are not entitled, and strangely upon Reynolds v. Alabama Dep't of Transp., No. 2:85CV665-MHT, 2013 WL 6230481, at *2 (M.D. Ala. Dec. 2, 2013), which found that plaintiff "has not alleged that monies owned him have been withheld or even why he believes an accounting of funds is necessary," and "fails to articulate what his interest in such an accounting is."  Id. at *2.  That is of course not the case here, where Plaintiff has articulated (1) a concrete contract right to an accounting, (2) for interest in her

---

[10] The accounting claim is directed to Dhanani, of course, (1) as the custodian of Digital Equity's records (as the only member), and (2) as a fellow joint venture partner, from whom an equitable accounting may be ordered.  O.C.G.A. § 23-2-70.

50% share of profits, first in the $200,000 sale of a website product, and (3)

thereafter, future profits from other operations, which Defendants dispute.  [D.E.

No. 17, at ¶¶ 19-21, 37, 39-40 (Am. Compl.); No. 17-1, at p.4 & ¶¶ 1, 4 (Profit

Agr.).]  As discussed infra, the accounting is likely to reveal further (4) interest in

potential actions against the person to whom the website was sold.  This harm to

Plaintiff is not "hypothetical," as in Corbett v. TSA, 930 F.3d 1225, 1239 (11th

Cir. 2019), cited by Defendants.

 Defendants' argument that "Plaintiff cannot meet the amount in controversy

requirement … with a complaint only for an accounting," is also without merit.

Courts have been clear that "[a]n action for an accounting alone, even without a

concomitant request for monetary relief, can satisfy the amount in controversy

requirement."  Sills v. Ronald Reagan Presidential Found., Inc., No. 09 CIV. 1188

(GEL), 2009 WL 1490852, at *4 (S.D.N.Y. May 27, 2009) (citing DiTolla v. Doral

Dental IPA of New York, 469 F.3d 271 (2d Cir. 2006)).  As discussed infra,

Plaintiff's accounting is as to all the business operations of Digital Equity, to

which she entitled 50% of the profits, which she adequately alleged exceed

$75,000—standing alone, making dismissal inappropriate.  Broadway v. State

Farm Mut. Auto. Ins. Co., 364 F. Supp. 3d 1329, 1342 n.17 (M.D. Ala. 2019),

cited by Defendants, merely stands for the proposition that diversity claims that

require additional claims to meet the jurisdictional amount are supplemental and may be dismissed, which is not relevant here.  <u>Sills</u>, 2009 WL 1490852, at *4.

## G.   DEFENDANTS FAILED TO ESTABLISH ANY BASIS TO DISMISS PLAINTIFF'S DECLARATORY JUDGMENT CLAIM.

Under Count VIII for declaratory judgment, Defendants again seek to repurpose arguments that were without merit when first raised and fare no better here.  [D.E. No. 26-1, at pp.28-29 (Defs.' Mem.).]  <u>First</u>, Defendants' claim that "Plaintiff admits … Dhanani agreed to provide the requested accounting so there is no dispute" is false.  [D.E. 17, at ¶ 40 (Am. Compl.).]  And, even if Dhanani agreed to provide an "accounting," there is a dispute as to what he must provide, whether merely a "profit and loss," or all "financial" statements, as agreed, including cash flow statements and a balance sheet, as well as access to the books and records of the company upon which such statements are based.  <u>Second</u>, Defendants' claim that they have somehow shown that an accounting claim is deficient is without merit, as addressed <u>supra</u>.  <u>See</u> <u>supra</u>, Section F.   <u>Third</u>, Defendants' argument that some unidentified "contract's express provisions unequivocally refute Plaintiff's nonpayment allegations" is again conclusory rhetoric over substance, and without merit.  <u>See</u> <u>supra</u>, Section A.2.  Relatedly, because Defendants are not entitled to dismissal of the contract claim, <u>Abecassis v. Eugene M. Cummings, P.C.</u>, 467 F. App'x 809, 814 (11th Cir. 2012), cited by

Defendants, does not apply.  Id.  Given the substantial disputes between the parties, a determination as to duplicity is premature.  See, e.g., AmeriPOD, LLC v. DavisREED Constr. Inc., No. 3:17-CV-00747-H-WVG, 2017 WL 2959351, at *7 (S.D. Cal. Jul. 11, 2017) ("[T]he Court cannot say that declaratory relief will be duplicative. …[until] summary judgment.").

Finally, Defendants argue that the "rights of the parties have already accrued, and there is 'no risk to Plaintiff of "taking future undirected action,"'" [D.E. No. 26-1, at p.29 (Defs.' Mem.)].  Procedurally, Defendants' reliance on Baker v. City of Marietta, 271 Ga. 210, 214 (1999), is misplaced, as it interprets O.C.G.A. § 9-4-2, not 28 U.S.C. § 2201.  See, e.g., Travelers Cas. & Sur. Co. v. Stewart, No. 1:14-CV-837-AT, 2015 WL 11233187, at *3 (N.D. Ga. Jan. 5, 2015) (citing Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ("Georgia law respecting 'justiciability' does not control the federal law of 'justiciability'")).  Substantively, this argument is false.  Digital Equity is a continuing legal entity, and the Profit Agreement between the parties contains no limitation regarding the 50% share that Plaintiff is entitled to receive from its operation—which she has demanded.  [D.E. No. 17, at ¶ 89 (Am. Compl.) (seeking a declaration regarding "all other future profits from sales under the categories enumerated in the Profit Agreement"); see also No. 17-1, at ¶ 1 (Profit Agr.) (agreeing to profit-sharing without limitation).]

Defendants' argument that product sales are not really "product sales" is an ongoing dispute as to further "net profits … generated by the Company."

**H.   PLAINTIFF'S PRAYER FOR RELIEF FOR ATTORNEYS' FEES AND PUNITIVE DAMAGES IS ADQUATELY PLED.**

Last, Defendants argue that the Georgia statutes that provide for attorneys' fees and punitive damages, cited in Plaintiff's prayer for relief, are not stand-alone claims.  [D.E. No. 26-1, at p.29 (Defs.' Mem.).]  Because Plaintiff established claims under Georgia law, as discussed extensively supra, such a prayer is not only appropriate but required.  See O.C.G.A. §§ 13–6–11; 51-12-5.1(d)(1).

## CONCLUSION

Defendants' motion to dismiss should be denied in its entirety.

Dated:  Yellowstone, Wyoming      Respectfully submitted,
       July 9, 2020

JACKLYN WILFERD, by and through her attorneys,

By:/s/John H. Ray, III_____
John H. Ray, III (admitted pro hac vice)

Ray & Counsel, P.C.
10044 South Leavitt Street
Chicago, IL 60643
(312) 772-6420 (p) (312) 940-5831 (f)
jray@rayandcounsel.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I, John H. Ray, III, hereby certify that this memorandum has been prepared with one of the font and point selections approved by the Court in LR 5.1(C), specifically Times New Roman 14 point.


/s/ John H. Ray, III
John H. Ray, III (admitted pro hac vice)

## <u>CERTIFICATE OF SERVICE</u>

I, John H. Ray, III, hereby certify that on July 9, 2020, I caused a true and correct copy of the foregoing amended complaint to be served electronically on all parties of record by the Court's CM/ECF system.


/s/ John H. Ray, III_____
John H. Ray, III (admitted pro hac vice)