IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JACKLYN WILFERD,

     Plaintiff,

               v.

DIGITAL EQUITY, LLC and
KHURAM DHANANI,

     Defendants.

Civil Action No.
1:20-cv-01955-SDG

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss filed by Defendants Digital Equity, LLC (Digital Equity) and Khuram Dhanani [ECF 26]. For the reasons stated below, and with the benefit of oral argument, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

The following facts are treated as true for purposes of this motion.[1]

On September 19, 1994, Plaintiff Jacklyn Wilferd (Wilferd) purchased the online

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

domain *wines.com*.[2] Beginning in 2012, Wilferd resumed active management of the domain, seeking to develop it as a commercial product.[3] Wilferd created a website containing articles, videos, discussion boards, and other resources.[4] Wilferd also developed linking relationships with the website and an e-commerce wine store to increase the value of the domain.[5] In 2018, Wilferd was introduced to Dhanani as a potential business partner.[6] Dhanani claimed to have substantial capital he would contribute to the business, as well as experience in developing domains as commercial products.[7] Specifically, Dhanani represented that he:

> (1) would invest $200,000–$300,000 of his own money into further developing *wines.com*, (2) had a "team" who could help further develop the website to a $3–5 million valuation "fast," and (3) in the arrangement, they would split all profits, including from the sale of the domain and website.[8]

In furtherance of these discussions, Dhanani sent Wilferd two contracts (both drafted by Dhanani) to be entered between Wilferd and Digital Equity, a

---

[2]   ECF 17, ¶2.

[3]   *Id*. ¶ 12.

[4]   *Id*.

[5]   *Id*.

[6]   *Id*. ¶ 12.

[7]   *Id*. ¶ 17.

[8]   *Id*. ¶ 18.

Georgia limited liability company with Dhanani as the sole member: (1) an agreement transferring *wines.com* to Digital Equity for $50,000 (Domain Agreement), and (2) a profit-sharing agreement by which Wilferd would receive 50% of the net profits generated by Digital Equity from various sales (Profit Agreement or PS Agreement).[9] Both the Domain and Profit Agreements contained (1) limitations and warranties clauses and (2) merger clauses.[10]

Wilferd alleges that, to induce her to sign the Domain and Profit Agreements, Dhanani promised that:

> (1) prospective buyers would not work with him unless the domain was transferred to Digital Equity, (2) he already had an interested company willing to pay $200,000 for advertising on the website, [ ] (3) Wilferd would receive $100,000 within thirty days, in addition to further payments for product sales, which would only increase as the Christmas season approached. . . . (4) Defendants would not sell the website and domain for less than $3–4 million, (5) Wilferd would have the right to approve any sale, and (6) prior to any sale, Defendants would actively operate the website as a "cash cow," producing between $5,000 and $10,000 per month in profits.[11]

---

[9]   *Id.* ¶ 19.

[10]   ECF 17-1, at 2, 4.

[11]   ECF 17, ¶ 23.

Wilferd and Digital Equity executed the Domain and Profit Agreements on July 15, 2018.[12]

After executing these agreements, Wilferd realized that "virtually everything about Dhanani was and is a fraud."[13] Wilferd contends Dhanani lied about his business acumen, did not actually have advertising ready for the website, had no personal money to invest, nor an intent to operate or develop the website.[14] Between July 2018 and April 2019, Dhanani allegedly made no effort to fund, operate, or update the website.[15] Wilferd repeatedly offered to return the $50,000 she received from Digital Equity in exchange for the domain, but Dhanani refused.[16]

Beginning in April 2019, blog articles attributed to Wilferd (that she did not author) began appearing on the website.[17] Some of these blog articles concerned salacious and pornographic topics.[18] Wilferd contends that Dhanani and Digital

---

[12]   *Id.* ¶ 24.

[13]   *Id.* ¶ 25.

[14]   *Id.* ¶ 29.

[15]   *Id.* ¶ 31.

[16]   *Id.*

[17]   *Id.* ¶ 32.

[18]   *Id.*

Equity were responsible for these articles, which continued to appear on the website until July 2019.[19] In October 2019, Wilferd learned that Dhanani had covertly sold *wines.com* for $200,000 on August 27, 2019.[20] Dhanani acknowledged the sale, but refused to provide any details to Wilferd, asserting that he had no obligation to pay any of the profits to Wilferd.[21] Wilferd claims she has never received any profits under the Profit Agreement.[22] Additionally, neither Dhanani nor Digital Equity have provided Wilferd with an accounting of Digital Equity, which she has repeatedly requested.[23]

Wilferd initiated this action on May 6, 2020.[24] On June 11, 2020, Wilferd filed her Amended Complaint, asserting eight causes of action: accounting (Count I, against both Defendants); breach of contract (Count II, against Digital Equity; Count III, against both Defendants); breach of fiduciary duty (Count IV, against both Defendants); fraud (Count V, against Dhanani); financial abuse of an elder (Count VI, against both Defendants); defamation (Count VII, against both

---

[19] *Id.* ¶¶ 33, 36.

[20] *Id.* ¶ 37.

[21] *Id.* ¶ 38.

[22] *Id.*

[23] *Id.* ¶ 39.

[24] ECF 1.

Defendants); and declaratory judgment (Count VIII, against both Defendants).[25]

On June 25, 2020, Defendants filed the instant motion to dismiss.[26] Wilferd filed

her response in opposition to Defendants' motion on July 9, 2020.[27] Defendants

filed their reply on July 23.[28]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a

complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ.

P 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

---

[25]    *See generally* ECF 17.

[26]    ECF 26.

[27]    ECF 28.

[28]    ECF 30.

This pleading standard "does not require detailed factual allegations." *Id.* (citing *Twombly*, 550 U.S. at 555). However, it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint providing "label and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not do. *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

### a.   Choice of Law

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). Under Georgia law, for claims arising under contract, "contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326

(N.D. Ga. 2015) (quoting *CS–Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.,* 283 Ga. 426, 428 (2008)). Paragraph 6 of the Domain Agreement and Paragraph 10 of the Profit Agreement contain choice of law provisions selecting Georgia law. Neither party has suggested the application of Georgia law to the contract claims violates public policy or is prejudicial to the state's interests. Accordingly, the choice of law provisions are valid and Georgia law applies to Wilferd's contract claims.

Wilferd's tort claims present a separate issue. Contractual choice-of-law clauses generally do not apply to tort claims. *Ins. House, Inc. v. Ins. Data Processing, Inc.,* No. 1:07-cv-0286-BBM, 2008 WL 11333547, at *6 (N.D. Ga. Nov. 19, 2008) (citing *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1139–40 (11th Cir. 2005); *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.,* 133 F.3d 1405, 1409 (11th Cir. 1998)). *See also EarthCam, Inc. v. OxBlue Corp.,* 49 F. Supp. 3d 1210, 1234 (N.D. Ga. 2014) ("A choice of law provision that relates only to the agreement will not encompass related claims."). The Court instead must apply Georgia's traditional choice of law rules for tort claims. Georgia follows the doctrine of *lex loci delicti*, pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.,* 279 Ga. 808, 809 (2005). "The place where the tort was committed . . . is the place where the injury sustained was

suffered rather than the place where the act was committed." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750–51 (2013) (citing *Risdon Enter., Inc. v. Colemill Enter., Inc.*, 172 Ga. App. 902, 903 (1984)). But an exception exists when the law of the foreign state is the common law; "application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 (N.D. Ga. 2003) (citing *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983)).

According to the Amended Complaint, Wilferd is a California resident. As such, Wilferd likely suffered her alleged injuries in that state. This points to the application of California law. However, with the exception of Count VI, all of Wilferd's tort claims are premised on the common law. Count VI is asserted under the California statute prohibiting the financial abuse of an elder; Cal. Welf. & Inst. Code § 15610.30. Therefore, pursuant to Georgia's choice of law rules, the Court applies Georgia law to each Count in the Amended Complaint except Count IV, which is governed by California law.

### b.    Analysis

Defendants contend each Count in the Amended Complaint must be dismissed as a matter of law. The Court addresses each claim in turn.

### i.    Breach of Contract and Covenant of Good Faith and Fair Dealing (Counts II and III)

Wilferd asserts two separate breach of contract claims: one against Digital Equity for breach of the Profit Agreement (Count II), and the other against both Defendants for breach of an alleged oral agreement (Count III). In Georgia, the elements of a breach of contract claim are "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590 (2013) (citing *Norton v. Budget Rent A Car System*, 307 Ga. App. 501, 502 (2010)). Defendants argue both counts must be dismissed as a matter of law.[29]

### 1.    Breach of the Profit Agreement (Count II)

Wilferd alleges Digital Equity breached the Profit Agreement by covertly selling the domain and website for *wines.com* and failing to pay her fifty percent of

---

[29] Wilferd also alleges Defendants' actions raise an inference of bad faith. Although "every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement," the covenant cannot provide an independent basis for liability. *Layer v. Clipper Petrol., Inc.*, 319 Ga. App. 410, 419 (2012). Therefore, Wilferd's bad faith arguments are part and parcel of her breach of contract claims.

the profits. Defendants contend this claim is not supported by the plain language

of the Profit Agreement. In relevant part, the Profit Agreement states:

> Starting on the Date that this PS Agreement is signed,
> Company agrees to share with Individual 50%
> (fifty percent) of net profits after expenses that are
> generated by Company directly from product sales,
> advertising sales, accessory sales, affiliate sales, ticket
> sales, tour sales and commission sales.[30]

Defendants argue the resale of the Domain Name is not expressly listed in this

paragraph and does not fit within any of the seven categories.

Specifically, Defendants contend that a domain name and website—such as

*wines.com*—is not a "product."

In Georgia, the construction of a contract "is a matter of law for the court,

unless an ambiguity remains in the contract after applying the rules of

construction." *Dep't of Transp. v. Meadow Trace, Inc.*, 274 Ga. App. 267, 269 (2005)

(citing *Golden Pantry Food Stores v. Lay Bros.*, 266 Ga. App. 645, 650 (2004)).

Contract construction requires three steps:

> First, the trial court must decide whether the language is
> clear and unambiguous. If it is, the court simply enforces
> the contract according to its clear terms; the contract
> alone is looked to for its meaning. Next, if the contract is
> ambiguous in some respect, the court must apply the
> rules of contract construction to resolve the ambiguity.

---

[30]   ECF 17-1, at 4.

> Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (2013). A contract term is ambiguous when it is capable of "more than one reasonable construction." *Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 76 (2013). *See also Caswell v. Anderson*, 241 Ga. App. 703, 705 (2000) ("Ambiguity exists when the language may be fairly understood in more than one way; language is unambiguous if it is capable of only one reasonable interpretation."). "The cardinal rule of contractual construction is to ascertain the intent of the parties." *Knott v. Knott*, 277 Ga. 380, 381 (2003) (citing O.C.G.A. § 13-2-3).

Beginning with its plain language, the Profit Agreement does not expressly provide that Wilferd is entitled to profits from the sale of the domain name and website for *wines.com*. But it does state that Wilferd is entitled to profits from "product sales." This term is not defined in the agreement. Under Georgia law, an undefined contract term "must be afforded its literal meaning," as "plain[,] ordinary words [are] given their usual significance." *Unified Gov't of Athens-Clarke Cnty. v. McCrary*, 280 Ga. 901, 903 (2006). To aid in this inquiry, Georgia courts look to the term's dictionary definition. *Capital Color Printing, Inc. v. Ahern*, 291 Ga. App. 101, 107 (2008). Here, the dictionary definition does not elicit a clear answer;

"product" is defined in relevant part as "[s]omething that is distributed commercially for use or consumption." Product, Black's Law Dictionary (11th ed. 2019). Wilferd and Digital Equity each urge the Court to adopt different interpretations as to what "product sales" means in the agreement, both of which are reasonable under the circumstances.[31] Thus, the Court finds the Profit Agreement is facially ambiguous on this issue.

The Court must proceed to step two and apply Georgia's canons of contract construction to resolve the ambiguity. *See Matthew Focht Enters., Inc. v. Lepore*, No. 1:12-CV-4479-WSD, 2014 WL 3557698, at *3 (N.D. Ga. July 18, 2014) ("The rules of contract construction in Georgia are dictated by statute."). O.C.G.A. § 13-2-2 identifies nine specific canons of construction. No one canon is absolute or determinative; "[e]ach may be overcome by the strength of differing principles that point in other directions." *In re Estate of McKitrick*, 326 Ga. App. 702, 706 (2014).

The Court finds that application of the statutory canons of construction do not resolve the ambiguity at this preliminary stage. For example, one canon is that

---

[31] The parties also point to conflicting authorities as to whether a domain name and website are considered "products." *Compare Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (finding that plaintiff "had an intangible property right in his domain name"), *with Gridiron.com, Inc. v. Nat'l Football League Player's Ass'n, Inc.*, 106 F. Supp. 2d 1309, 1314 (S.D. Fla. 2000) ("[W]ebsites, in and of themselves, are products.").

"[w]ords generally bear their usual and common signification." O.C.G.A. § 13-2-2(2). As stated above, the dictionary definition of "product" does not clarify the disputed term. Another canon is that "words are given meaning by their context." *Estate of Pitts*, 323 Ga. App. 82. This is buttressed by a canon stating that a "construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2(4). Ultimately, "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument . . . is generally to be preferred." O.C.G.A. § 13-2-2(5). *See also Stern's Gallery of Gifts, Inc. v. Corp. Prop. Inv'rs, Inc.*, 176 Ga. App. 586, 593 (1985) ("As a general rule the provisions of a contract will be construed against the draftsman.").

At first glance, the context surrounding "product sales" seems to weigh in Digital Equity's favor. The term is included amongst a list of specific items and services for which Wilferd would be entitled to receive remuneration: "advertising sales, accessory sales, affiliate sales, ticket sales, tour sales and commission sales."[32] The nature of these terms seems to indicate that the parties intended Wilferd to receive revenue from items and services sold on the website, not the

---

[32]   ECF 17-1, at 4 ¶ 1.

sale of the entire website itself. But at oral argument, Digital Equity could not identify what "products" were sold, or intended to be sold, on the website. Digital Equity instead defined "product sales" to mean "tour sales," "ticket sales," and "advertising sales." This interpretation cannot be accepted, as it would ostensibly render the term "product sales" superfluous to the remainder of the sentence. *VATACS Grp., Inc. v. HomeSide Lending, Inc.*, 276 Ga. App. 386, 389 (2005) ("[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless.").

In sum, the Court is unable to resolve this ambiguity at the motion to dismiss stage because it must resort to extrinsic evidence to ascertain the intent of the parties. O.C.G.A. § 13-2-2(1). *See also Thomas v. Am. Glob. Ins. Co.*, 229 Ga. App. 107, 109 (1997) ("[A]fter the application of pertinent rules of contract construction to the contract, extrinsic evidence becomes admissible to explain any remaining ambiguity."); *Martin v. S. Atl. Inv. Corp.*, 160 Ga. App. 852, 854 (1982) ("It is only after applying the rules of construction and an ambiguity remains is extrinsic evidence admissible to explain the ambiguity."). The parties will be permitted an

opportunity to take discovery and present evidence on this issue, which the Court may resolve as a matter of law on a motion for summary judgment, if appropriate.

### 2.      Breach of Oral Agreement (Count III)

Wilferd alleges that she entered into an oral agreement with Defendants to jointly develop *wines.com* for a subsequent commercial sale. Defendants, conversely, contend that any alleged oral agreement is barred by merger clauses in the Domain and Purchase Agreements.

Oral contracts are enforceable under Georgia law. O.C.G.A. § 13-1-5(b) ("Simple contracts may either be in writing or rest only in words as remembered by witnesses."). This is true even if the parties contemplated the execution of a subsequent written agreement. *Turner Broad. Sys., Inc. v. McDavid*, 303 Ga. App. 593, 601 (2010). However, when the parties execute a "written contract[] containing a merger clause . . . all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001). *See also Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 797 (2007) ("Under the merger rule, an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and

inconsistent agreement completely covering the subject-matter embraced by the original contract.").

Wilferd alleges Dhanani and Digital Equity made certain promises to her regarding their future intent to jointly develop *wines.com* for commercial sale. Wilferd points to specific statements from Dhanani and Digital Equity she contends encompass the oral joint venture agreement. Wilferd and Digital Equity subsequently executed the Domain and Profit Agreements; neither contained the alleged oral promises pointed to by Wilferd. Wilferd has subsequently sought the rescission of the Domain Agreement, but affirmed and sought damages for the alleged breach of the Profit Agreement. The Profit Agreement's merger clause states:

> This [Profit] Agreement constitutes and contains the entire agreement and understanding between the Parties hereto with respect to the subject matter herein and supersedes any prior or contemporaneous oral or written agreements, representations, discussions, proposals, understandings, and the like respecting the subject matter hereof. This [Profit] Agreement cannot be changed, modified, amended, or supplemented in any way, shape or form whatsoever, without exception, including in writing or orally.[33]

---

[33]   ECF 17-1, at 4 ¶ 9.

The Profit Agreement listed Digital Equity as a party, but not Dhanani individually.

Wilferd contends the merger clause is inapplicable at this stage because there is a question of fact as to whether it covers the same subject matter as the alleged oral agreement. Under Georgia law, "for the merger rule to apply [ ] the parties of the merging contracts must be the same and the terms of those contracts must completely cover the same subject matter and be inconsistent." *Atlanta Integrity Mortg.*, 286 Ga. App. at 797. *See also Nat'l ID Recovery, Inc. v. LifeLock, Inc.*, No. 1:09-cv-0489-TCB, 2009 WL 10699688, at *3 (N.D. Ga. Oct. 7, 2009) (citing *First Data*, 273 Ga. at 792) ("[M]erger clauses only extinguish prior agreements that relate to the same subject matter."). In granting a motion to dismiss, a court in this district has found that, as a matter of law, "[i]t is improper to be overly restrictive in determining whether a previous agreement relates to the same subject matter as a subsequent agreement containing a merger clause." *Nat'l ID Recovery*, 2009 WL 10699688, at *3 (citing *Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp.*, 892 F. Supp. 1520, 1538 (N.D. Ga. 1995)). According to that court:

> [T]he scope of an agreement's subject matter, at least with regard to the application of a merger clause, is typically interpreted to be broad enough to encompass any prior arrangement between the parties involving the provision of the same type of goods or services.

*Nat'l ID Recovery*, 2009 WL 10699688, at \*3 (finding two contracts covered the same subjects as a matter of law).

Comparing Wilferd's allegations regarding the oral contract with the terms of the Profit Agreement, the Court finds the two cover the same subject matter. Both concern Wilferd's and Digital Equity's relationship and representations to each other to develop *wines.com* for commercial use and monetary gain. Merely because the Profit Agreement does not contain the list of prior promises allegedly made to Wilferd does not create a sufficient factual distinction. *Conway v. Romarion*, 252 Ga. App. 528, 532 (2001) ("A merger clause such as the one in the present case prevents a party from claiming reliance upon a representation *not contained in the contract.*") (emphasis in original). Since there is a substantial overlap in subject matter, the merger clause in the Profit Agreement bars any alleged oral contract between Wilferd and Digital Equity.

Dhanani, on the other hand, was not a party to the Profit Agreement. The merger clause in the Profit Agreement expressly states that it "constitutes and contains the entire agreement and understanding **between the Parties hereto**."[34] It also states that it is "**not binding** upon [Digital Equity's] respective

---

[34]   ECF 17-1, at 4 ¶ 9 (emphasis added).

representatives."[35] According to Wilferd, the plain language of the Profit Agreement thus prevents Dhanani from availing himself of the merger clause. Defendants disagree and contend Dhanani can invoke the merger clause because he acted as Digital Equity's agent. They point to case law providing that "an agent of a contracting party can rely upon a merger clause contained in the contract to preclude claims against the agent for his or her alleged representations made before formation of the contract." *Greenwald v. Odom*, 314 Ga. App. 46, 57 n.5 (2012) (citing *Tampa Bay Fin. v. Nordeen*, 272 Ga. App. 529, 534 (2005)). *See also Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493 (11th Cir. 2009) (holding a "merger clause does not apply just to the parties to the contract"); *Eco Sols., LLC v. Verde Biofuels, Inc.*, No. 4:09-cv-0125-HLM, 2011 WL 13135279, at *17 (N.D. Ga. Feb. 1, 2011) (holding non-parties may invoke a merger clause as agents of the party to contract and noting "that the merger clause, by its plain terms, does not preclude statements of non-parties to the Agreements").

Defendants' authorities are, however, inapplicable here. The plain language of the Profit Agreement explicitly states that it ***only*** covers Wilferd and Digital Equity and ***does not*** cover Digital Equity's representatives or agents. Put another

---

[35]   *Id*. at 4 ¶ 8 (emphasis added).

way, Dhanani is expressly excluded from availing himself of any provisions in the Profit Agreement, including the merger clause. As previously stated, the Court must enforce the unambiguous terms of the agreement as written. *E.g.*, *Office Depot, Inc. v. Dist. at Howell Mill, LLC*, 309 Ga. App. 525, 529 (2011) ("When the language of the contract is clear and unambiguous, we enforce those terms as written, and we will not look to matters outside of the contract."). Therefore, Count III is dismissed against Digital Equity, but may proceed against Dhanani individually.

### ii. Fraudulent Inducement (Count V)

Wilferd alleges Dhanani made fraudulent promises and statements to induce her to sign the Domain Agreement. In Georgia, a party asserting a fraudulent inducement claim has two choices: "(1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Legacy Acad., Inc. v. Mamilove, LLC*, 297 Ga. 15, 17 (2015). Wilferd seeks to rescind the Domain Agreement. Defendants argue Wilferd cannot do so as a matter of law based on the type of fraud alleged. Defendants point to the Georgia Supreme Court's decision in *Novare Group, Inc. v. Sarif*, which held:

> It is well-settled law in Georgia that a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument based on oral representations

that differ from the terms of the contract. Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.

290 Ga. 186, 188–89 (2011) (citations omitted). *See also Legacy Acad.*, 297 Ga. at 18 (affirming *Novare* and holding that "[b]ecause the pre-contractual earnings claim upon which the [plaintiffs] allege they relied expressly contradicts the disclaimer and acknowledgment provisions of the Agreement, their reliance on such representations was unreasonable as a matter of law").

As stated above, Dhanani is precluded from utilizing the merger or disclaimer clauses in the agreements. Defendants' reliance on *Novare* and its progeny is therefore misplaced. Wilferd need not rescind or otherwise untangle the contractual relationship between herself and Digital Equity to pursue a fraud claim against Dhanani individually because Dhanani is expressly not a party to either contract.

Defendants' next argument—that Wilferd's fraud claim cannot be premised on "mere puffery or promises of anticipated future performance"—is likewise unpersuasive. As a general rule, "actionable fraud cannot be predicated upon promises to perform some act in the future" or "a mere failure to perform promises

made." *Buckley v. Turner Heritage Homes, Inc.*, 248 Ga. App. 793, 795 (2001). But an exception exists when "a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." *Gibson Tech. Servs, Inc. v. JPay, Inc.*, 327 Ga. App. 82, 84 (2014) (citing *BTL COM, Co. v. Vachon*, 278 Ga. App. 256, 258 (2006)). What is more, if the statement "was not a future promise but a present misrepresentation of fact, it is sufficient to support a claim for fraud." *BTL COM*, 278 Ga. App. at 258 (citing *Baker v. Campbell*, 255 Ga. App. 523, 527 (2002)).

Here, Wilferd points to a litany of allegedly false statements made by Dhanani that concern both (1) present misrepresentations of fact[36] and (2) promises to perform certain acts in the future.[37] Wilferd alleges Dhanani's representations "were intentionally and knowingly false at the time they were

---

[36]   *E.g.*, ECF 17, ¶ 23 ("Dhanani personally claimed that (1) prospective buyers would not work with him unless the domain was transferred to Digital Equity, [and] (2) he already had an interested company willing to pay $200,000 for advertising on the website.").

[37]   *Id*. ("Dhanani personally claimed that . . . (4) Defendants would not sell the website and domain for less than $3–4 million, (5) Wilferd would have the right to approve any sale, and (6) prior to any sale, Defendants would actively operate the website as a 'cash cow,' producing between $5,000 and $10,000 per month in profits.").

made . . . with the intent that Wilferd would rely upon them."[38] At this stage, Wilferd's allegations state a facially plausible claim that Dhanani lied about existing facts or knowingly made false statements of fact with no present intent to perform. This is enough to survive a motion to dismiss.

### iii.   Breach of Fiduciary Duty (Count IV)

Wilferd alleges Defendants breached various fiduciary duties owed to her. To state a claim for the breach of a fiduciary duty, Wilferd must allege "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage[s] proximately caused by the breach." *Griffin v. Fowler*, 260 Ga. App. 443, 445 (2003) (citing *Conner v. Hart*, 252 Ga. App. 92, 94 (2001)). A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Mail & Media, Inc. v. Rotenberry*, 213 Ga. App. 826, 828 (1994) (citing O.C.G.A. § 23-2-58). A fiduciary duty "may be created by law, contract, or the facts of a particular case." *Douglas v. Bigley*, 278 Ga. App. 117, 120 (2006) (citing *Bienert v. Dickerson*, 276 Ga. App. 621, 624 (2005)). But the "party

---

[38]   *Id.* ¶ 70.

asserting the existence of a confidential relationship has the burden of establishing its existence." *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 531 (2003).

Defendants argue Wilferd's breach of fiduciary duty claim fails because she cannot show a duty or subsequent breach. Defendants characterize their relationship with Wilferd as an "ordinary arms-length transaction" that should not be converted into a confidential relationship. In the Amended Complaint, Wilferd alleges Defendants owed her a fiduciary duty because she (1) was a profit-sharing partner in Digital Equity under the Profit Agreement, and (2) a joint venture partner with both Defendants based on the alleged oral agreement.[39] Wilferd points to the representations allegedly made to her and posits she engaged with Defendants to further joint business objectives, not individual gains. For example, Wilferd alleges she "contributed the domain and website . . . as well as new articles, new content, shared knowledge, and overall expertise" to Defendants, who contributed their time and expertise in exchange for the profit-sharing relationship.[40] Wilferd alleges she "placed a near-critical level trust, faith

---

[39]   ECF 17, at 27.

[40]   *Id*. ¶ 63 (punctuation omitted).

and confidence in [Dhanani's] judgment, business acumen and advice in performing the principal executive office of Digital Equity."[41]

Treating Wilferd's allegations as true, the Court finds she has stated a facially plausible claim. Defendants are correct that an ordinary business transaction generally does not give rise to a fiduciary duty. *Mail & Media*, 213 Ga. App. at 828 ("In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone."). *See also Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1249 (11th Cir. 2007) ("A confidential relationship does not arise, however, where the business transaction is merely an arrangement in which each party is attempting to further its own separate business objectives, rather than entering into some sort of joint venture."). But this does not entirely foreclose the potential existence of such a duty. *Gilmore v. Bell*, 223 Ga. App. 513, 514 (1996) ("[A]ll the law requires is a showing of a relationship which justifies the reposing of confidence by one party in another."). *See also Bienert*, 276 Ga. App. at 624 ("When a fiduciary or confidential relationship is not created by law or contract, we must examine the facts of a particular case to determine if such a relationship

---

[41]   *Id*. ¶ 62.

exists."). It is also not determinative at this stage that the parties referred to themselves as "independent contractors" in the Profit Agreement.[42] *See New York Life Ins. Co. v. Grant*, No. 5:14-cv-101 (MTT), 2016 WL 1241186, at *10 (M.D. Ga. Mar. 28, 2016) (citing *Automated Sols. Enters., Inc. v. Clearview Software, Inc.*, 255 Ga. App. 884, 888 (2002)); *Gilmore*, 223 Ga. App. at 514 ("While an independent contractor relationship does not necessarily give rise to a fiduciary relationship, it does not preclude a fiduciary relationship either."). Georgia courts are clear that the existence of a duty is "a factual matter for the jury to resolve." *Bienert*, 276 Ga. App. at 624. *See also Gilmore*, 223 Ga. App. at 514 ("The existence of a confidential relationship depends heavily upon the circumstances of each case."); *Mail & Media*, 213 Ga. App. at 828 ("The law recognizes that a confidential relationship may exist between businessmen, depending on the facts."). As such, Defendants' arguments regarding Wilferd's failure to establish a duty—as well as a breach of that duty— is better suited for resolution at a later stage in this proceeding.

### iv.    Defamation (Count VII)

Wilferd alleges Defendants defamed her by falsely attributing offensive blog articles posted on *wines.com* to her without consent. Wilferd alleges these

---

[42]    ECF 17-1, at 4 ¶ 6.

posts were "sexually salacious, pornographic, and in some instances, degrading, and grammatically incorrect."[43] The elements for defamation under Georgia law are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Eason v. Marine Terminals Corp.*, 309 Ga. App. 669, 672 (2011) (citing *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 557 (2005)).

Defendants argue Wilferd's defamation claim is barred by the Communications Decency Act (CDA). Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by *another* information content provider." *Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 199 F. App'x 738, 742 (11th Cir. 2006) (citing 47 U.S.C. § 230(c)(1)) (emphasis in original)). An "information content provider is any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Whitney*, 199 F. App'x at 742. Defendants here

---

[43]   ECF 17, ¶ 82.

contend Wilferd has not plausibly alleged that either Dhanani or Digital Equity

authored the at-issue blog articles. Specifically, Defendants posit that Wilferd's

allegations premised "upon information and belief" are insufficient.

> The Court does not agree. In the Amended Complaint, Wilferd alleges:

> > Defendants authored, participated in the creation of or otherwise caused and approved these abhorrent, sexist and degrading statements to be published without justification, privilege or other defense. Upon information and belief, these statements were not independently made by third parties.[44]

Wilferd additionally alleges that Defendants:

> > [W]ere directly responsible for either authoring and/or hiring foreign contractors to author these posts, as well as directly participating in and approving their publication. Upon information and belief, the posts were not independently created by any third party. Indeed, at the time, and still today, the website *www.wines.com* did not and does not allow independent user content to be posted on the website. The only content posted to the blog is by users authorized and approved by the website owners, in this case, Digital Equity.[45]

These allegations contain enough specific facts to plead that either Dhanani or

Digital Equity authored or created the at-issue blog articles and posted them to the

website. This is enough to raise Wilferd's claim above the speculative level. Nor is

---

[44]   ECF 17, ¶ 84.

[45]   *Id*. ¶ 33.

there anything impermissible with Wilferd alleging facts "upon information and belief" at this stage. *Boateng v. Ret. Corp. of Am. Partners, L.P.*, No. 1:12-cv-01959-JOF, 2013 WL 12061901, at *4 (N.D. Ga. Mar. 5, 2013) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ("*Twombly's* plausibility standard did not prevent a plaintiff from pleading facts based upon information and belief, where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.")).

> ### v. Accounting (Count I)

Wilferd seeks an accounting of Digital Equity's books and records. The Profit Agreement provides Wilferd with a right to demand an accounting.[46] Further, Georgia law provides the Court with jurisdiction to hear a claim for equitable accounting when an account involves:

> (1) Mutual accounts growing out of privity of contract;
> (2) Cases where accounts are complicated and intricate;
> (3) Cases where a discovery or writ of ne exeat is prayed and granted; (4) Cases where the account is of a trust fund; (5) Accounts between partners or tenants in common; and (6) Cases where a multiplicity of actions

---

[46] ECF 17-1, at 4 ¶ 4 ("<u>Information.</u> Company will provide individual access to financial information upon request, including revenue, sales, expenses, screenshots, and profits.").

> would render a trial difficult, expensive, and
> unsatisfactory at law.

O.C.G.A. § 23-2-70.

As stated above, the Court finds that Wilferd's breach of contract claim against Digital Equity as to the Profit Agreement survives dismissal. Therefore, Wilferd has a corollary right under that agreement for an accounting against Digital Equity. Although Defendants argue that they "have already agreed to provide [Wilferd] this information," that does not change the result, as Wilferd alleges Defendants have not yet fulfilled that obligation.[47] As to Dhanani, Wilferd contends the claim is directed to him "as the custodian of Digital Equity's records (as the only member)" and "as a fellow joint venture partner, from whom an equitable accounting may be ordered."[48] Wilferd also alleges Dhanani is commingling the assets of Digital Equity—as well as the profits from the sale of *wines.com*—with his own accounts.[49] These allegations provide a sufficient basis for Wilferd to proceed with her claim against Dhanani as to those intertangled financial accounts. O.C.G.A. § 23-2-70.

---

[47]   ECF 17, ¶ 46.

[48]   ECF 28, at 27 n.10 (citing O.C.G.A. § 23-2-70)). *See also* ECF 17, ¶ 44.

[49]   ECF 17, ¶ 40.

### vi.    Financial Abuse of an Elder (Count VI)

Wilferd alleges that Dhanani and Digital Equity violated California statutory law by defrauding an elder.[50] In relevant part, California Welfare and Institutions Code § 15610.30(a)(1) provides:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
>
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
>
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

The California state legislature intended this statute to be broad in scope. *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841, 858 (Cal. Ct. App. 2017).

Defendants argue Wilferd's claim must be dismissed because she cannot maintain a predicate claim for a violation of this statute.[51] Defendants' argument

---

[50]  An "elder" is statutorily defined as "any person residing in [California], 65 years of age or older." Cal. Welf. & Inst. Code § 15610.27. According to Wilferd, she was over the age of 65 during the relevant time period [ECF 17, ¶ 76].

[51]  ECF 26-1, at 26 ("An accounting, fiduciary duty, declaratory judgment, or even defamation claim is not enough. Because all of [Wilferd's] breach of contract and fraud claims must fail, she cannot maintain a claim for elder financial abuse, either.").

is moot. As stated above, the Court finds that aspects of Wilferd's claims for breach of contract, fraud, and breach of fiduciary duty survive dismissal. Wilferd may base her elder financial abuse claim on these underlying counts. *E.g., Crawford v. Cont'l Cas. Ins. Co.*, No. SACV1400968CJCJCGX, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014) (holding plaintiff could maintain elder financial abuse claim premised on allegations of bad faith breach of contract).

### *vii.*   Declaratory Judgment (Count VIII)

Wilferd seeks a declaration from the Court that she is entitled to:

> (a) [ ] access and conduct an inspection of the books and records of Digital Equity, (b) an accounting, and (c) payment of profits arising out of the sale of *wines.com*, a product sale under the Profit Agreement between the parties, among other and future profits to which she claims she is entitled under the Profit Agreement.[52]

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Pursuant to Article III's "case or controversy" requirement, the Court may only entertain a declaratory judgment claim "in the case of an actual controversy." *Walden v. Ctrs. for Disease*

---

[52]   ECF 17, ¶ 87.

*Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (citing *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985)). But there is no "actual controversy" when a plaintiff's request for a declaratory judgment is duplicative of her other claims asserted in the same action. *E.g., Daniels v. Wells Fargo Bank N.A.*, No. 1:14-cv-2640-TCB-WEJ, 2014 WL 12492006, at *9 (Oct. 31, 2014) ("[I]n the context of Federal Rule 12(b)(6), courts will dismiss declaratory judgment claims that seek resolution of matters that will be resolved as part of other claims in the lawsuit."), *report and recommendation adopted*, No. 1:14-cv-2640-LMM, 2014 WL 12493322 (N.D. Ga. Dec. 2, 2014).

Wilferd's requests for declaratory relief here are entirely duplicative of her claims for accounting and breach of the Profit Agreement. Both claims are plausibly alleged and survive dismissal. The Court's resolution of those two claims will afford Wilferd the same relief sought through her declaratory judgment claim. As such, Count VIII is redundant and must be dismissed. *See Eisenberg v. Standard Ins. Co.*, No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) ("[A] decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant.").

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [ECF 26] is **GRANTED IN PART** and **DENIED IN PART**. Count VIII is **DISMISSED** in its entirety. Count III is **DISMISSED** only against Digital Equity. Wilferd may proceed on Counts I, II, III (solely against Dhanani), IV, V, VI, and VII. Defendants shall file their Answers to the remaining claims in the Amended Complaint within 14 days after entry of this Order. The parties shall file their initial disclosures and a revised joint proposed preliminary report within 14 days after Defendants file their Answers. The discovery period shall commence 30 days after Defendants file their Answers.

**SO ORDERED** this the 20th day of November 2020.

Steven D. Grimberg
United States District Court Judge