## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACKLYN WILFERD,

     Plaintiff,

          v.

DIGITAL EQUITY, LLC and KHURAM DHANANI,

     Defendants.

Civil Action No.
1:20-cv-01955-SDG

## OPINION AND ORDER

This matter is before the Court on a motion for reconsideration filed by Defendants Digital Equity, LLC and Khuram Dhanani [ECF 40] and a partial motion to dismiss counterclaims filed by Plaintiff Jacklyn Wilferd [ECF 43]. For the following reasons, both motions are **DENIED**.

## I.    BACKGROUND[1]

This action concerns allegations of breach of contract and fraud relating to the development and sale of the online domain *wines.com*. Wilferd initiated this action on May 6, 2020.[2] She filed her Amended Complaint on June 11, asserting

---

[1]    The underlying facts of this case as alleged by Wilferd in the Amended Complaint (treated as true) are more thoroughly summarized in the Court's November 20, 2020 Order [ECF 36].

[2]    ECF 1.

eight causes of action.[3] On November 20, 2020, the Court granted in part and denied in part a motion to dismiss filed by Defendants (hereafter, the November 20 Order).[4] That Order: (1) dismissed Count VIII (declaratory judgment) against both Defendants; (2) dismissed Count III (breach of contract) only as to Digital Equity; and (3) permitted Wilferd to proceed with Counts I, II, III (solely against Dhanani), IV, V, VI and VII.[5] Defendants disagree with certain conclusions reached in the November 20 Order. Accordingly, on December 18, they filed the instant motion for reconsideration.[6] Wilferd opposed that motion on January 4, 2021, and Defendants filed their reply on January 19.[7]

On December 4, 2020, Defendants answered and asserted four counterclaims against Wilferd: breach of contract (Count I); fraud (Count II); defamation (Count III); and attorneys' fees (Count IV).[8] On December 28, Wilferd filed a motion to dismiss counterclaim Counts II and III. Defendants filed a

---

[3]   ECF 17.

[4]   ECF 36.

[5]   *Id*.

[6]   ECF 40.

[7]   ECF 44; ECF 52.

[8]   ECF 37.

response in opposition to that motion on January 11, 2021, and Wilferd filed her reply on January 25.[9]

## II.  DISCUSSION

### A.  Defendants' Motion for Reconsideration

#### 1.  Legal Standard

The Local Rules of this Court caution that "[m]otions for reconsideration shall not be filed as a matter of routine practice." LR 7.2(E), NDGa. Such motions are appropriate only if "a party believes it is absolutely necessary." *Id.* Absolute necessity is recognized in three specific scenarios; "where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003). *See also Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1370 (N.D. Ga. 2014) ("Courts may grant relief under Rule 59(e) or Local Rule 7.2E only if the moving party clears a high hurdle."); *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (describing a request for reconsideration as being held to an "onerous standard").

---

[9]   ECF 49; ECF 54.

A motion for reconsideration is not to be treated "as an opportunity to show the court how it could have done it better." *Bryan*, 246 F. Supp. 2d at 1259 (citing *Pres. Endangered Areas of Cobb's Hist., Inc.*, 916 F. Supp. at 1560). Nor should it simply "present the court with arguments already heard and dismissed or [ ] repackage familiar arguments to test whether the court will change its mind." *Id.* (citing *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)). Finally, it may not be used to "offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Id.* (citing *Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001)). *See also Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (holding party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). The ultimate decision on reconsideration is "committed to the sound discretion of the district court." *Reid v. BMW of N. Am.*, 464 F. Supp. 2d 1267, 1270 (N.D. Ga. 2006).

## 2.   Analysis

Defendants contend the Court erred in its November 20 Order, specifically with regard to its analysis of Counts II, III, and V. Defendants do not point the

Court to newly discovered evidence or a shift in the governing law. Their request is instead premised on the belief that the Court committed two clear errors of fact or law.

No matter the characterization, Defendants' contentions are not of the ilk demonstrating absolute necessity as to justify reconsideration. As their reconsideration motion makes abundantly clear, Defendants raised these precise arguments in their motion to dismiss.[10] They now maintain that the Court got it wrong the first time. Even if that were the case—which, as discussed below, the Court does not believe it is—that is not enough to grant Defendants their sought-after relief. *E.g., Gold Cross EMS, Inc. v. Children's Hosp. of Ala.*, 108 F. Supp. 3d 1376, 1379 (S.D. Ga. 2015) ("[A] motion for reconsideration is not an appeal, and thus it is improper on a motion for reconsideration to ask the Court to rethink what it has already thought through—rightly or wrongly.") (punctuation omitted) (collecting

---

[10] *See* ECF 40-1, at 5 ("In moving to dismiss Count III, Defendants argued that the merger clauses in *both* the Domain and Profit Agreements barred [Wilferd's] claim of breach of oral agreement.") (emphasis in original); *id.* at 8 ("Defendants argued that the merger and disclaimer clauses in *both* the Domain and Profit Agreements barred [Wilferd's] fraud claim in count V of the Amended Complaint.") (emphasis in original); *id.* at 12–13 ("In both [their] initial brief, and reply brief, Defendants outlined that 'product sales' meant the sale of wine. . . . [T]he Court apparently overlooked these clear statements from both Defendants' briefs.").

cases); *Chesnut*, 17 F. Supp. 3d at 1370 ("[A] motion for reconsideration is not a substitute for an appeal."). Nonetheless, the Court will consider the merits of Defendants' positions in turn.

### i.    Reconsideration Is Not Warranted as to Counts III and V.

Defendants argue the Court erred by not applying a merger clause found in the Domain Agreement to bar Wilferd's breach of oral contact and fraudulent inducement claims against Dhanani. Both causes of action are premised on similar factual allegations. Wilferd alleges Dhanani made, and then failed to perform, a litany of oral promises relating to *wines.com*. None of these alleged oral promises were memorialized in either the Profit Agreement or Domain Agreement. Both agreements, however, contained merger clauses.

In the November 20 Order, the Court found the merger clause in the Profit Agreement foreclosed Wilferd's breach of oral contract claim against Digital Equity. *See, e.g., Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 190 (2011); *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001). But as to Dhanani, the Court concluded that he could not avail himself of the merger clause in that agreement because: (1) only Wilferd and Digital Equity—not Dhanani—were parties to the Profit Agreement, and (2) it expressly stated that it "constitutes and contains the entire agreement and understanding between the Parties hereto" and was "not binding upon

[Digital Equity's] respective representatives."[11] In other words, although the general rule in Georgia is that "an agent of a contracting party can rely upon a merger clause contained in the contract to preclude claims against the agent for his or her alleged representations made before formation of the contract,"[12] the plain language of the Profit Agreement prevented Dhanani from doing so. Defendants may strongly disagree with this interpretation, but the Court is required to enforce the unambiguous terms of a contract as written. *E.g., Office Depot, Inc. v. Dist. at Howell Mill, LLC*, 309 Ga. App. 525, 529 (2011).

In their reconsideration motion, Defendants argue the Court additionally reached the wrong result by "only referenc[ing] the merger clause in the Profit Agreement" and "erroneously attribut[ing] contractual language found exclusively in the [Profit Agreement] . . . to the [Domain Agreement]."[13] Put another way, Defendants aver that Dhanani should be able to avail himself of the merger clause in the Domain Agreement as to compel the dismissal of Counts

---

[11]   ECF 37, at 19.

[12]   *Greenwald v. Odom*, 314 Ga. App. 46, 57 n.5 (2012) (citing *Tampa Bay Fin. v. Nordeen*, 272 Ga. App. 529, 534 (2005)). *See also Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493 (11th Cir. 2009); *Eco Sols., LLC v. Verde Biofuels, Inc.*, No. 4:09-cv-0125-HLM, 2011 WL 13135279, at *17 (N.D. Ga. Feb. 1, 2011).

[13]   ECF 40-1, at 1–2, 4–10.

III and V against him. They assert the Court erred in the November 20 Order by ignoring or overlooking the merger clause in that agreement.

The Court clarifies that it did not ignore or overlook the merger clause in the Domain Agreement. It is true that the Court only analyzed Dhanani's ability to enforce the merger clause found in the Profit Agreement. But that is because, as the Court expressly stated, "Wilferd has [ ] sought the rescission of the Domain Agreement."[14] It is well established in Georgia that "[a] party that rescinds is not limited by the contract terms." *Sudler v. Campbell*, 250 Ga. App. 537, 540 (2001). *See also City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770 (1974); *Jones v. Cartee*, 227 Ga. App. 401, 403 (1997); *Orion Cap. Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 542 (1996). The ultimate decision of whether Wilferd may rescind the Domain Agreement is at least one of mixed fact and law best determined at a later stage. *City Dodge*, 232 Ga. at 770 ("[T]he question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury."); *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 591 (1991) ("[T]he Supreme Court [in *City Dodge*] has laid to rest the contention that a merger

---

[14]    ECF 37, at 13.

clause in a contract being attacked for fraud precludes proof that the contract was fraudulently induced."). *See also Novare*, 290 Ga. at 190 (distinguishing *City Dodge* where the plaintiff relies on "[s]tatements that directly contradict the terms of the agreement . . . for the purpose of cancelling or rescinding a contract"). At bottom, reconsideration is not warranted.

### ii.    Reconsideration Is Not Warranted as to Count II.

Defendants argue that the Court also erred in its analysis of Count II. Wilferd alleges Digital Equity breached the Profit Agreement by selling the domain and website for *wines.com* without paying her fifty percent of the profits. In their motion to dismiss, Defendants argued this claim was not supported by the plain language of the Profit Agreement. In the November 20 Order, the Court: (1) analyzed the plain language of the Profit Agreement, (2) found the undefined term "product sales" ambiguous, (3) applied Georgia's canons of contract construction, and (4) ultimately concluded that those canons did not resolve the ambiguity as a matter of law at the motion to dismiss stage. Defendants object to this finding. They argue the Court gave undue consideration to an answer by their legal counsel during oral argument and ostensibly ignored certain representations in their briefing that the term "product sales" actually means the sale of wine.

This is likewise insufficient to justify reconsideration. Again, the premise of Defendants' argument is that the Court ignored or overlooked certain arguments or representations in their briefing. The November 20 Order makes clear that the Court did not do so. Specifically, the Court noted that "Wilferd *and Digital Equity* each urge the Court to adopt different interpretations as to what 'product sales' means in the agreement, both of which are reasonable under the circumstances."[15] These differing interpretations supported the finding of a facial ambiguity. The Court therefore proceeded to apply the Georgia canons of contract construction in an attempt to resolve that ambiguity. For a variety of reasons detailed in the November 20 Order, the Court determined that it could not do so as a matter of law on a motion to dismiss. The answer given by Defendants' legal counsel during oral argument was a reaffirmation—not the sole justification—for this conclusion. In sum, the Court reaffirms its conclusion that discovery is needed to resolve Count II. Defendants' motion for reconsideration is denied.

---

[15] ECF 37, at 13 (emphasis added). Although Wilferd's Amended Complaint alludes to the potential sale of wine on *wines.com*, the Court does not interpret this as a concession that the term "product sales" only means the sale of wine.

**B.**     **Wilferd's Partial Motion to Dismiss Counterclaims**

**1.**     **Legal Standard**

The Court evaluates a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) in the same manner as a motion to dismiss a complaint. *United States v. Zak*, 481 F. Supp. 3d 1305, 1307 (N.D. Ga. 2020). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At this juncture, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

### 2.    Analysis

Wilferd moves for the dismissal of counterclaim Counts II (fraud) and III (defamation) asserted by Defendants. The Court addresses each in turn.

### i.    Fraud (Count II)

The basic factual allegations underpinning Defendants' fraud counterclaim largely mirror those supporting the same cause of action asserted by Wilferd; *i.e.*, Defendants allege Wilferd made numerous false or fraudulent oral promises prior to execution of the Profit and Domain Agreements.[16] Somewhat ironically, Wilferd now argues the fraud counterclaim must be dismissed for the precise same reason previously advanced by Defendants in their motion to dismiss (and on reconsideration)—that it is barred by the merger clauses in the Profit and Domain Agreements. According to Wilferd, the alleged promises were not memorialized in—but instead directly contradict the express terms of—those agreements. Defendants, conversely, argue the alleged promises, which Wilferd had no intention to perform when she made them, are incorporated as terms of those agreements and, thus, not barred.

To reiterate, "where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped

---

[16]    ECF 37, ¶ 78.

from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail." *Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007). *See also Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, 262 Ga. App. 826, 828 (2003) ("[I]f the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract.") (punctuation omitted). But a merger clause will not bar a fraud claim based on alleged misrepresentations in the agreement itself. *Chhina Fam. P'ship, L.P. v. S-K Grp. of Motels, Inc.*, 275 Ga. App. 811, 813 (2005); *WirelessMD, Inc. v. Healthcare.com Corp.*, 271 Ga. App. 461, 469 (2005); *Authentic Architectural Millworks*, 262 Ga. App. at 828. Defendants' fraud claim appears to be premised on the latter. They allege Wilferd made false, pre-contractual promises and point to specific provisions in the agreements that purportedly embody those promises. What is more, Defendants allege Wilferd made these promises with the present intent to not perform. At this preliminary stage, that is enough to survive a motion to dismiss. *See Am. Fam. Life Assur. Co. of Columbus v. Intervoice, Inc.*, 659 F. Supp. 2d 1271, 1284 (M.D. Ga. 2009).

### ii.    Defamation (Count III)

Defendants allege Wilferd defamed them by posting a comment containing false statements on a public Facebook page belonging to the online periodical The

Good Men Project. Specifically, in response to an article written by The Good Men

Project about Dhanani's career, Wilferd posted:

> This is far from the whole story. As founder and
> President of Wines.com for 24 years, my experience is
> that this "good man" is anything but . . . Your writer did
> not research what Khuram Dhanani REALLY did to get
> Wines.com. I'd be very surprised that The Good Men
> Project would tout him like this, if they knew the truth.[17]

Wilferd argues this claim must be dismissed because: (1) it is barred by the

applicable statute of limitations; (2) the post consisted of Wilferd's personal

opinions, not statements of fact; and (3) it is otherwise barred by a litigation

privilege.

### a.    Statute of Limitations

The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1).

Generally, the existence of such an affirmative defense "will not support a motion

to dismiss." *Quiller v. Barclay's Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984)

(citations omitted). *See also La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845

(11th Cir. 2004). However, a pleading "may be dismissed under Rule 12(b)(6)

when its own allegations indicate the existence of an affirmative defense, so long

---

[17]   ECF 37, ¶ 61.

as the defense clearly appears on the face of the [pleading]." *Quiller*, 727 F.2d at 1069. *See also Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013).

A federal court sitting in diversity must apply the statutes of limitations of the relevant state—in this case, Georgia. *Miss. Valley Title Ins. Co. v. Thompson*, 802 F.3d 1248, 1251 n.2 (11th Cir. 2015). In Georgia, a defamation claim is subject to a one-year limitations period. O.C.G.A. § 9-3-33. Defendants' counterclaim is premised on a Facebook comment posted by Wilferd on November 6, 2019.[18] Defendants, however, did not assert this counterclaim until December 4, 2020—more than one year after Wilferd posted the comment. Thus, absent tolling, the claim is time barred.

Defendants argue the limitations period should be tolled. According to Georgia law:

---

[18]    *See* ECF 43-1, at 3 n.1. Defendants argue the Court cannot take judicial notice of the date Wilferd posted this comment. The Court does not agree. "[W]here Courts take judicial notice of items such as Facebook posts . . . the authenticity of such content is either not in dispute or such internet postings were expressly incorporated by reference into the Plaintiff's complaint." *Scanz Techs., Inc. v. JewMon Enters., LLC*, No. 20-22957-CIV, 2021 WL 65466, at *5 (S.D. Fla. Jan. 7, 2021) (collecting cases). Although Defendants argue they do not yet know the precise date Wilferd posted the comment, the Court may take judicial notice of the date listed on the Facebook comment itself, as it is incorporated by reference—and entirely comprises—their defamation counterclaim. Defendants' concern that "the date of a Facebook post is capable of being altered" is attenuated and speculative.

> The limitations of time within which various actions may be commenced and pursued within this state to enforce the rights of the parties are extended, only insofar as the enforcement of rights which may be instituted by way of counterclaim and cross-claim, so as to allow parties, up to and including the last day upon which the answer or other defensive pleadings should have been filed, to commence the prosecution and enforcement of rights by way of counterclaim and cross-claim, provided that the final date allowed by such limitations for the commencement of such actions shall not have expired prior to filing of the main action.

O.C.G.A. § 9-3-97. *See also Gibson v. Casto*, 271 Ga. 667, 668 (1999) ("O.C.G.A. § 9–3–97 ties the period of limitations for a compulsory counterclaim to the time for filing defensive pleadings. That statute plainly provides that a counterclaim is timely if filed within the time that a defendant is obligated to answer the main action, provided the limitations period for the counterclaim had not expired prior to the time the main action was commenced.").

Here, the "main action" could either be Wilferd's Complaint (filed May 6, 2020) or Amendment Complaint (filed June 11, 2020).[19] Pursuant to O.C.G.A. § 9-3-97, those are the relevant dates from which to gauge the statute of limitations. Under O.C.G.A. § 9-3-33, Defendants' defamation counterclaim is timely because

---

[19] Since Defendants' counterclaim is timely based on either the Complaint or Amended Complaint, the Court need not decide which constitutes the "main action" for purposes of O.C.G.A. § 9-3-97.

Wilferd filed those pleadings within one year of the Facebook post on November 6, 2019.

Wilferd, nonetheless, argues that *Gibson* made an express distinction between a compulsory and permissive counterclaim. To be sure, the majority opinion in *Gibson* only referred to a "compulsory counterclaim." 271 Ga. at 668. But it did so because that was the only type of counterclaim at issue there. Put another way, the majority in *Gibson* did not exclude permissive counterclaims from this tolling statute. This is made clear by the three-Justice concurring opinion in *Gibson*: "[T]his same rule also applies where the counterclaim is permissive. O.C.G.A. § 9–3–97 does not differentiate between permissive and compulsory counterclaims, and the majority's interpretation of that statute logically applies to both types of counterclaims." *Gibson*, 271 Ga. at 669 (Carley, J., concurring). Since Defendants may avail themselves of this tolling statute, the defamation claim is timely.

> *b.* **Distinction Between Statement of Opinions or Facts**

Wilferd next argues Defendants cannot maintain the defamation counterclaim because, as a matter of law, the Facebook comment constituted her personal opinions of Dhanani, not verifiable facts. Under Georgia law:

> There are four elements to a defamation claim: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

*Smith v. DiFrancesco*, 341 Ga. App. 786, 787 (2017) (quoting *Mathis v. Cannon*, 276 Ga. 16, 20 (2002)).

"Although as a general rule the question whether a particular communication is defamatory is for the jury, if the statement is not ambiguous and reasonably can have only one interpretation, the question of defamation is one of law for the court." *Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 44 (1992). For the first element:

> [A] defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false. As a result, a plaintiff who claims that a published opinion defamed him will generally be unable to carry his burden of proving the essential element of falsity. Still, there is no wholesale defamation exception for anything that might be labeled opinion. An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false.

*Cottrell v. Smith*, 299 Ga. 517, 523 (2016) (punctuation omitted).

Put another way, "as a general rule, statements of pure opinion are not capable of being proven false and cannot form the basis of a defamation claim." *Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230, 234 (2011). But at the same time, a defendant "is not spared from liability simply by couching an alleged defamatory falsehood in the context of an opinion, be it the defendant's own opinion or that of a third-party." *Id.* at 234–35. In fact, the Supreme Court has rejected that "an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990). In *Milkovich*, the Supreme Court provided the following hypothetical on-point to the allegations in this case:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'"

*Milkovich*, 497 U.S. at 18–19. "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are

questions of law for the court." *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1347 (N.D. Ga. 2018) (citing *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018)).

Not all statements comprising Wilferd's Facebook comment are ones of pure opinion. Indeed, some aspects of Wilferd's post are rooted in innuendo about Dhanani's alleged inappropriate conduct. For example, Wilferd's statement that "my experience is that this 'good man' is anything but" could be construed as her personal opinion. But the following statements that "Your writer did not research what Khuram Dhanani REALLY did to get Wines.com" and that Wilferd would "be very surprised that The Good Men Project would tout him like this, if they knew the truth" arguably implies that Dhanani committed wrongdoing in his business dealings with Wilferd regarding *wines.com*. Those are facts that can be verified or disproven. Thus, Wilferd is not entitled to dismissal on opinion grounds.

### c.   Georgia's Litigation Privilege

Wilferd finally argues the counterclaim should be dismissed because her statements are protected by a litigation privilege. According to Georgia law:

> All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are

> privileged. However false and malicious such charges,
> allegations, and averments may be, they shall not be
> deemed libelous.

O.C.G.A. § 51-5-8.

Defendants contend this litigation privilege is not applicable here because their counterclaim is not premised on statements made in this action. But that is not entirely true. Defendants explicitly allege Wilferd defamed them because, "upon information and belief, Ms. Wilferd and/or her authorized agents [have] spread the false allegations in this lawsuit through the media."[20] That allegation may implicate the litigation privilege. Even assuming it does, however, the Court finds that outright dismissal of the counterclaim at this stage is not appropriate. The gravamen of Defendants' counterclaim concerns Wilferd's statements about Dhanani in the Facebook post.[21] Those statements occurred outside this litigation and are not protected by any privilege. Although Defendants may proceed with their defamation counterclaim, any future liability cannot be premised on statements protected by the litigation privilege.

---

[20]   ECF 37, ¶ 85.

[21]   *Id*. ¶¶ 84–88.

## III.    CONCLUSION

Defendants' motion for reconsideration [ECF 40] is **DENIED** and Wilferd's

motion to dismiss counterclaims [ECF 43] is **DENIED**.

**SO ORDERED** this the 5th day of May 2021.

Steven D. Grimberg
United States District Court Judge